<hr />

# BINZ v. HYATT et al., Appellants.

Division One, December 22, 1906.

1. **MATURITY OF BONDS:** Meaning When Used in Contract. The defendants in 1894 entered into a written agreement reciting that they had paid plaintiff for a certain property with ten bonds of $1,000 each, "secured by a mortgage or deed of trust on the property of" a certain company, "maturing in 1913, and bearing interest," and guaranteed that "if said bonds shall not be paid at maturity and if for that reason the mortgage or deed of trust securing the same shall be foreclosed," they would be present at the sale and make the property bring the principal sum of all the bonds issued. *Held,* that the word

"maturity" thus used was merely descriptive of the bonds, and does not mean that the agreement was that defendant was to attend a sale in 1913; but, the mortgage providing that the deed of trust could be foreclosed upon default in the payment of interest, and the bonds themselves having referred to the mortgage, and the *lex loci* allowing only one foreclosure for the entire debt, the agreement obligated defendants to be present at the foreclosure sale for failure to pay interest, and they are liable for whatever damages resulted to plaintiff for failure to meet that obligation.

2. **LIMITATIONS:** Administrator: Contingent Continuing Liability. The two-year Statute of Limitations as to fixed liabilities of an administrator on a contract entered into by his intestate, does not bar his liability on a contract under which the liability is contingent and the maturity of which may reach beyond the period of two years after letters have been issued and notice given; it does not bar the claim until two years after the liability ceased to be contingent and became fixed.

Appeal from Buchanan Circuit Court.—*Hon Wm. L. Jarrott*, Special Judge.

AFFIRMED.

*Vinton Pike, C. F. Strop* and *Scarritt, Scarritt & Jones* for appellants.

(1)   The memorandum sued on is nothing more than a strict guaranty, and should not receive a broader or more liberal interpretation than is signified by the words used when given their ordinary and usual meaning.   Our contention is that the guaranty stated clearly that these bonds mature November 27, 1913, and that if the plaintiff held the bonds until that date and default was made in the payment of them at maturity and for that reason the mortgage was foreclosed and the property sold to satisfy the bonds, they would bid $15,000 for the property.   And we  submit  that  unless this court goes beyond the terms of this guaranty agreement and looks to some other document, or unless this

court assumes, out of a false and impartial notion of charity, to make a better contract for the plaintiff than he made himself, the construction placed upon this undertaking by the trial court must be discarded and the defendant be held to be not liable to this action.   (2) The writing of December 12, 1894, on which this suit is founded, is an agreement of guaranty, and as such the court will strictly construe the language used in favor of the guarantor and will not extend his liability beyond the precise terms of the agreement.   Allen v. Bank, 4 Mo. App. 66; Mitchell v. Railton, 45 Mo. App. 277.   (3)   Resort cannot be had to the mortgage or to the bonds to define the word "maturity" in order to change the date to which the phrase "at maturity" refers as declared by the contract itself.   This contract is within the statute of frauds.   R. S. 1899, sec. 3418; Warren v. Mayer Mfg. Co., 161 Mo. 112; Rucker v. Harrington, 52 Mo. App. 481; Ringer v. Holtzclaw, 112 Mo. 519; Biest v. Shoe Co., 97 Mo. App. 155; Bruckam v. Dry Goods Co., 91 Mo. 454.   (4)   This bond is payable in Missouri and is a negotiable instrument.   It expresses a promise, for value received, to pay a certain sum of money at a certain time to a certain person or to the order of a certain person.   These are the sole requisites of negotiable paper in Missouri.   Crawford v. Johnson, 87 Mo. App. 478; Clark v. Porter, 90 Mo. App. 143; Bank v. Goodloe-McClelland Com. Co., 93 Mo. App. 123.   (5) But the deed of trust in question does not even provide that in case of default in interest the principal shall mature absolutely.   Miller v. Wagenhauser, 18 Mo. App. 11; Gart v. Bagley, 110 Mo. 54; St. Louis v. Laughlin, 49 Mo. 559; St. Louis v. Porter, 29 Mo. App. 605; Brooks v. Cook, 44 Mich. 617. (6)   The alleged cause of action against Burnes, administrator, is barred under the Statute of Limitations. R. S. 1899, sec. 86.

*Kendall B. Randolph* for respondent.

(1)   Contingent claims, maturing during administration, may be allowed against the estate at any time during the two years next after such maturity, although letters of administration may have been issued years before the maturity of such claims. Miller v. Woodward, 8 Mo. 169; Finney v. State, 9 Mo. 227; Chambers v. Smith, 23 Mo. 174; Burton v. Rutherford, 49 Mo. 258; Tenney v. Lasley, 80 Mo. 664; State v. Tittman, 134 Mo. 168; Taylor v. Priest, 21 Mo. App. 687; Morgan v. Gibson, 42 Mo. App. 244; State v. Tittman, 54 Mo. App. 501.   (2)   The recital in the contract with reference to the maturity of the bonds was simply descriptive of the instruments themselves. The obligors in the early part of their contract entered upon a general description of the bonds, and in that connection correctly described them as falling due by their terms on the 27th day of November, 1913.   (3)   Evidently the parties in making and accepting this contract, were looking to a foreclosure sale whenever it might become necessary or be considered necessary to protect the plaintiff bondholder. Its purpose was to safeguard him against loss, to the extent at least of enabling him to realize on his bonds their full face value.   Hax v. Hax, 84 Mo. App. 313.   The parties knew that only one foreclosure, under the mortgage or deed of trust, could be made. They knew that on account of the non-payment of interest it might take place at any time. It was expressly so provided in the mortgage or deed of trust, to which they referred in their contract. It was the sale under this foreclosure, whenever it might occur, that Hyatt and Owens agreed to attend.   (4)   The interpretation and force of contracts must be governed by the law of the State where they are to be performed and enforced. Smoot v. Judd, 161 Mo. 684; Watts v. Creighton, 55 Ia. 154; Leavitt v.

Reynolds, 79 Ia. 351. Although the proper demand was made on the trustee by the bondholders, to institute this foreclosure suit, such demand was not, in fact, necessary. The mortgage or deed of trust gave him express authority on his own motion to declare the bonds due and to institute the suit of foreclosure. And the bringing of the suit was a sufficient declaration of election to have all the bonds fall due, no demand of payment being necessary. Hawes v. Ins. Co., 109 Mich. 324; Whitcher v. Webb, 44 Cal. 127; Dean v. Applegarth, 65 Cal. 392; Clemens v. Luce, 101 Cal. 432; Johnson v. Van Velsor, 43 Mich. 208; Buchanan v. Ins. Co., 96 Ind. 520; Harper v. Ely, 56 Ill. 179; Swearengen v. Lahner, 93 Iowa 147; Brown v. McKay, 151 Ill. 315; Morling v. Bronson, 37 Neb. 608. (5) A case like the one at bar is Stickney v. Evans, 127 Mass. 202.

GRAVES, J.—Plaintiff, Fred Binz, brought suit in the circuit court of Buchanan county, against Calvin C. Hyatt and James N. Burnes, administrator of the estate of John R. Owens, deceased. Trial was had in that court in which plaintiff recovered as against both defendants for $9,192, and defendants appealed. The suit is bottomed upon the following written instrument, viz:

"To Fred Binz:

"Having this day purchased of you an undivided one-half interest in the sausage works, and all personal property owned by the firm of Hoefer & Binz, in the city of St. Joseph, Missouri, and having paid for said property in ten certain bonds secured by a mortgage or deed of trust on the property of the Merchants Coal Company of Cincinnati, Iowa, said bonds being of the face value of one thousand dollars each, and being numbered from six to fifteen inclusive, maturing on the 27th day of November, 1913, and bearing interest at the rate of six per cent per annum, payable semiannually, I therefore, in compliance with our verbal agreement,

hereby guarantee that if said bonds shall not be paid at maturity, and if for that reason the mortgage or deed of trust securing same shall be foreclosed, and the mortgaged property sold to satisfy said bonds, that I will be present at said sale and bid fifteen thousand dollars for the property secured by said mortgage or deed of trust.

"Dated at St. Joseph, Missouri, this 12th day of December, 1894.

"C. C. HYATT,

"J. R. OWENS."

The record so far as the evidence is concerned, is short and no particular conflicts therein. Such parts of the evidence as require notice, will receive attention in the course of the opinion. The serious questions are (1) the construction to be given this written contract, and (2) the Statute of Limitations as to the estate of John R. Owens.

I. That the contract is one of guaranty and is subject to the rule of strict construction may be conceded. The whole controversy in this case turns upon the meaning of the word "maturity," as it appears in the clause of the contract reading, "I, therefore, in compliance with our verbal agreement, hereby guarantee that if said bonds shall not be paid at maturity, and if for that reason the mortgage or deed of trust, securing same shall be foreclosed, and the mortgaged property sold to satisfy said bonds, that I will be present at said sale and bid fifteen thousand dollars for the property secured by said mortgage or deed of trust."

Plaintiff claims that the "maturity" in this clause mentioned is the maturity called for in the deed of trust, and not the date of the maturity of the bonds, as recited in the first part of the agreement. Defendants urge that the sale they were bound to attend was a sale after November 27, 1913, the date of the maturity of the bonds as expressed in the face of the bonds.

Thus the contention was sharply drawn. What is the meaning of the word ''maturity'' as used in the clause quoted above? The clause in the contract saying, ''Maturing on the 27th day of November, 1913, and bearing interest at the rate of six per cent per annum, payable semiannually,'' is merely descriptive of the bonds, as also are the words, ''Secured by a mortgage or deed of trust on the property of the Merchants Coal Company of Cincinnati, Iowa.''

In other words, the recitals contained in the first part of the contract are merely descriptive of the bonds and the mortgage or deed of trust, with reference to which the parties were contracting.

In order that there be a fair understanding of the case it will be necessary to summarize a little from the evidence. The bonds mentioned were not ''carriers without luggage,'' for in their face they refer specifically to the mortgage, and further contain a provision by which they can be paid before maturity and stop the interest, in this language: ''The said Merchants Coal Company, however, reserving the right to pay off this bond at any time before maturity by paying the principal thereof with five per cent premium and all accrued interest to the date of such payment; giving notice of its intention to do so by publication in a newspaper of general circulation in the city of Cincinnati, Iowa, once each week, for four successive weeks prior to the date when payment will be made, and thereupon all interest thereon shall cease on the day designated in such notice as the day on which the same shall be paid. This bond is one of a series of fifteen bonds of like form and tenor, the payment of which is secured by a mortgage or deed of trust to R. A. Brown, trustee, bearing even date herewith and duly recorded, to which mortgage or deed of trust, and the provisions and conditions thereof, reference is hereby made. This bond shall

not become obligatory until the certificate hereon endorsed shall be signed by R. A. Brown, Trustee.''

The mortgage or deed of trust which was introduced in evidence among other things provided: ''In case default be made in the payment of interest on any of the said bonds, and such default shall continue for ninety days after demand duly made therefor, in the manner hereinbefore provided, then the principal, as well as the interest of all said bonds shall, at the election of the trustee, upon written notice by said trustee to the coal company, become and be at once due and payable, and be so held and deemed for the purpose of entry, sale and foreclosure in the manner hereinbefore provided, and for all other purposes whatsoever. Said notice to be given to the coal company by the trustee as herein provided may be given at the election of the trustee, but he shall not be bound to give same unless requested in writing by holders of one-fourth of the bonds secured by this mortgage or deed of trust then outstanding and unpaid, and unless indemnified as aforesaid.''

According to the evidence, the trustee Brown, at the request of the bond-holders, proceeded in the Iowa court to foreclose the deed of trust, procure judgment of foreclosure as well as judgment for the full amount of the bonds and interest. The property was sold and brought but little more than the expenses of foreclosure and of the receiver appointed in that proceeding. Under the evidence the corporation executing the bonds is totally insolvent, and at this foreclosure sale the signers of the contract in suit did not appear and bid at all.

It is conceded that this mortgage is an Iowa contract, and, bearing upon the question of maturity, the following Iowa statutes were in evidence:

''Sec. 4557. When a mortgage or deed of trust is foreclosed, the court shall render judgment for the entire amount found to be due, and must direct the mort-

gaged property, or so much thereof as is necessary, to be sold to satisfy the same, with interest and costs. A special execution shall issue accordingly, and the sale thereunder shall be subject to redemption as in cases of sale under general execution.

"Sec. 4558. If the mortgaged property does not sell for sufficient to satisfy the execution, a general execution may be issued against the mortgagor, unless the parties have stipulated otherwise."

In addition upon the back of each bond was the Trustee's Certificate, in this language:

## "TRUSTEE's CERTIFICATE.

"This is to certify that this is one of a series of bonds numbered from one to fifteen, both inclusive, issued in conformity with and under the provisions of the deed of trust or mortgage within named.

"R. A. BROWN, Trustee."

Now by the terms of this contract the signers thereof obligated themselves to be present at a mortgage sale of property sold to satisfy these bonds, if the mortgage was foreclosed. There could be but one sale of property under a foreclosure of the mortgage. The court decreeing the foreclosure might direct separate sales of different species of property and at separate times, but this is rarely done, so that the parties to this contract in our mind had in view but one sale, and that a sale under a foreclosure of this mortgage. The bonds themselves refer to the mortgage, the trustee's certificate on the back thereof makes specific reference to the mortgage, under the terms and powers of which the bonds were issued. Taking this contract from the four corners of the instrument itself and giving it a reasonable construction, we hold that the word "maturity" as therein used, has reference to the maturity of the bonds as provided for by the mortgage and the statutes of Iowa, above quoted, which are as much a

part of the mortgage, as if written therein, for this mortgage is an Iowa contract.

In our judgment this is the only reasonable construction to be given this contract. The parties in the contract refer to both the bonds and the mortgage or deed of trust, and these instruments refer to each other. We must take the contract and the instruments referred to therein, and construe them all together to get the real meaning of this contract, and when this is done, it is apparent that they could have had in view the one sale to be had under the foreclosure of the mortgage, and a sale to be had at the maturity of the bonds as said maturity is provided for by the mortgage. We therefore hold the first contention of the appellants to be not well founded. A very similar case is found in Stickney v. Evans, 127 Mass. 202.

II. We come now to the Statute of Limitations as urged by the Owens estate. John R. Owens died in July, 1899; James N. Burnes was appointed administrator about August 1, 1899, and duly published notice of the grant of his letters of administration as required by law; this notice contained the usual provision as to the allowance of claims and stated that all claims not presented within two years would be barred. The administrator further charged by way of answer, and the facts showed, that more than two years had run from the date of the letters of administration. The sale under the foreclosure proceeding occurred October 18, 1902, under a decree of foreclosure of date September 9, 1902. This suit was filed February 19, 1903. The foregoing are sufficient of the facts for this proposition.

The liability under the contract is a contingent one. It could not arise until the contingency had happened, to-wit, the foreclosure sale and the failure of Hyatt and Owens to be present and bid $15,000 thereat. It is not a claim where there is a fixed liability, the maturity of

which might reach beyond the period of this special Statute of Limitations, but it is a claim where there is only a contingent liability, which liability might never arise. In such cases the statute relied upon by appellant, section 185, Revised Statutes 1899, does not begin to run until the liability under the contract becomes fixed by the happening of the contingency. The statute bars ordinary demands, but not demands which arise under the contract pleaded in this case. [State ex rel. v. Tittmann, 134 Mo. l. c. 168; Tenny v. Lasley, 80 Mo. l. c. 668; Burton v. Rutherford, 49 Mo. l. c. 258; Taylor v. Priest, 21 Mo. App. l. c. 687; Morgan v. Gibson, 42 Mo. App. l. c. 244.]

In the case at bar there was no liability until October 18, 1902, and no claim could have been presented prior to that date; the authorities above cited, as well as others in this State, are to the effect that the statute would not begin to run, in a case of this kind, until October 18, 1902, the date upon which there became a fixed liability under this contract.

It therefore follows that the action is not barred as to the Owens estate.

There are no further serious contentions made by counsel for appellants, so that from what has been said we conclude that the judgment of the circuit court should be affirmed, and it is so ordered. *Brace, C. J.,* and *Valliant, J.,* concur; *Lamm, J.,* not sitting.