**In re ESTATE of Isaac T. BIERMAN, Deceased.**

**HARTFORD ACCIDENT AND INDEMNITY COMPANY, Claimant and Petitioner, Appellant,**

v.

**Leonard L. BIERMAN and Ruth L. Kalmon, Executors, Respondents.**

**No. 32495.**

St. Louis Court of Appeals.

Missouri.

Dec. 20, 1966.

 

Kenney, Reinert & Hespen, St. Louis, for appellant.

Karol A. Korngold, St. Louis, for respondents.

RUDDY, Judge.

Hartford Accident and Indemnity Company, hereinafter referred to as Hartford, filed its claim in the St. Louis County Probate Court against the Estate of Isaac T. Bierman. The first claim filed was not served on the executors. A subsequent claim was filed by Hartford, denominated "Supplemental Claim," and copies thereof were served on the executors on July 10 and 14, 1963.

The executors moved to dismiss the claim in the Probate Court on the grounds that it had not been filed within the time permitted by law for the filing of claims, and that it had not been properly served on the executors. The Probate Court sustained the motion, whereupon Hartford took an appeal to the St. Louis County Circuit Court. There the executors moved to dismiss the claim on the ground that the court did not have jurisdiction for the reasons asserted in the Probate Court. The court sustained the motion and after Hartford's motion for new trial had been overruled it appealed to the Supreme Court of Missouri. The Supreme Court concluded that the matters attempted to be raised by Hartford were not properly before it and did not afford a sufficient basis for invoking its appellate jurisdiction. The cause was transferred to this court. In Re: Bierman's Estate, Mo., 396 S.W.2d 545.

Isaac T. Bierman died on August 28, 1960 and letters testamentary were granted on September 9, 1960, and the first notice of the grant of letters was published September 16, 1960.

On May 22, 1963, Hartford filed its claim in the amount of $1,672.29 in the Probate Court of St. Louis County against the estate of the decedent. No service of this claim was had on the executors of the es-

tate. On July 5, 1963, Hartford filed a "Supplementary Claim." As stated, a copy of this claim was served on the executors of the estate of Isaac Bierman on July 10 and July 14, 1963, by the Sheriff of St. Louis County.

On December 24, 1947, Hartford executed a bond in the sum of $2000 in favor of Alton and Eastern Railroad Company, et al, wherein it guaranteed payment by the Principal on the bond, Compressed Steel Corporation, of freight charges incurred by Compressed Steel Corporation.

The claim of Hartford is based upon an indemnity agreement executed on December 24, 1947, wherein Isaac Bierman, agreed in consideration of Hartford executing the aforesaid bond, to hold Hartford harmless from any loss it may sustain or incur by reason of having executed the bond.

In the claim filed in the Probate Court by Hartford it is alleged that on or about June of 1962 the obligee, under the said bond, made claim against the Compressed Steel Corporation, the Principal on the bond, and against Hartford, the surety on the said bond, in the amount of $1,672.29. Demand was made upon the Compressed Steel Corporation to pay this claim and, upon the failure of said Principal to pay the claim, it was paid by Hartford. It is further alleged that as a result thereof it had sustained a loss of $1,672.29 which has not been paid to it by the estate of Isaac Bierman, the indemnitor under the said bond, or by his heirs.

The indemnity agreement provided that its " * * * covenants shall be jointly and severally binding upon the undersigned, (Isaac Bierman) their (his) respective heirs, executors, administrators, successors and assigns." (Parentheses added.) As heretofore stated Hartford filed its original claim on May 22, 1963, and on July 5, 1963 filed a "Supplementary Claim." We find that the supplemental claim was in proper form and duly verified and was properly served upon the executors.

Hartford's liability to the obligee under the bond did not take place until June of 1962, at which time Hartford paid the claim of the obligee. Hartford's supplementary claim was not filed until July 5, 1963. One of the grounds assigned in the executors' motion to dismiss, which was sustained by the Probate Court, was that the claim had not been filed within the time permitted by law for the filing of claims. The question for determination is whether the claim is one that falls within the provisions of Section 473.360 RSMo 1959 V.A.M.S.

We quote the provisions of the aforesaid section pertinent to the claim before us:

"1. Except as provided in sections 473.367 and 473.370, all claims against the estate of a deceased person, other than costs and expenses of administration and claims of the United States and tax claims of the state of Missouri and subdivisions thereof, whether due or to become due, absolute or *contingent*, liquidated or unliquidated, founded on contract or otherwise, which are not filed in the probate court within nine months after the first published notice of letters testamentary or of administration, are forever barred against the estate, the executor or administrator, the heirs, devisees and legatees of the decedent. No contingent claim based on any warranty made in connection with the conveyance of real estate is barred under this section." (Emphasis added)

We are not concerned with the matters contained in Sections 473.367 and 473.370.

Pertinent to a discussion of the claim involved here are the provisions of Section 473.390 RSMo 1959 V.A.M.S. "Contingent claims which cannot be allowed as absolute debts shall be filed nevertheless in the court and proved. If allowed as a contingent claim, the order of allowance shall state the nature of the contingency. If the claim becomes absolute before distribution of the estate, it shall be paid in the same manner as absolute claims of the same class. In

all other cases the court may provide for the payment of contingent claims in any one of the following methods: * * *." (We omit the methods of payment of contingent claims.)

It will be noted that the obligation of Hartford under the bond did not accrue and become absolute during decedent's lifetime or during the nine months after the first published notice of letters testamentary.

■ Hartford's bond and decedent's indemnity agreement were operative and in full force at the time of Isaac Bierman's death and under the terms of the indemnity agreement liability was not terminated or extinguished by reason of Isaac Bierman's death. United States for Use and Benefit of Wilhelm, Trustee, et al. v. Chain, Executrix, 300 U.S. 31, 57 S.Ct. 394, 81 L.Ed. 487; Elms Realty Co. v. Wood, 285 Mo. 130, 225 S.W. 1002; and, Finney v. State, 9 Mo. 227. The executors, by force of the provisions of the agreement, were liable for the performance of the obligation set forth in the indemnity agreement, provided Hartford filed its claim timely. The primary question for determination is whether it was necessary for Hartford to file a claim within the nine month period provided in the non-claim statute, Section 473.360, supra.

■ Did Hartford have a contingent claim within the provisions of the non-claim statute? We think it did have such a claim. In making this determination we are aware that we are not considering a claim which was not due at the time of decedent's death or within the non-claim period and which was payable at a future day. Section 473.-383, RSMo 1959, V.A.M.S.

In the case of Howard's Estate v. Howe, 344 Mo. 1245, 131 S.W.2d 517, l. c. 519, the Supreme Court said: "* * * A contingent claim is one where the liability depends upon some future event, which may or may not happen, and therefore makes it now wholly uncertain whether there will ever be a liability. The contingency does not relate to the amount which may be recovered, but to the uncertainty whether any amount may ever be recovered. * * *" For the same definition of a contingent claim see: In Re Franz' Estate, Mo., 245 S.W.2d 1, l. c. 7; Elms Realty Co. v. Wood, supra, l. c. 1005; Stevens v. Stevens, 172 Mo. 28, 72 S.W. 542; Beckers-Behrens-Gist Lumber Co. v. Adams, Mo. App., 311 S.W.2d 70; and, Maus, Probate Law and Practice, Volume 4, Section 921, p. 209 and cases therein cited.

Applying the aforesaid definition to the instant indemnity agreement, we find that liability depends upon the happening of a future event, namely; default in payment by Compressed Steel Corporation of freight charges due the obligee and Hartford's payment of said charges. Liability under the indemnity agreement depended on whether Compressed Steel Corporation ever defaulted in the payment of the freight charges due the obligee. If Compressed Steel Corporation paid all the freight charges Hartford would never be called upon to make any payment. Therefore, there would never be any liability under the decedent's indemnity agreement. At the time of decedent's death and during the nine month period under the non-claim statute it was not certain that the Compressed Steel Corporation would default in the payment of freight charges; nor was it certain that it would pay all freight charges to the obligee when due. Therefore, default in the payment of freight charges was a future event which may or may not occur; thus, liability under the indemnity agreement was wholly uncertain. Liability could not arise until the contingency had happened. It may never arise. This served to create a contingent claim in favor of Hartford and against the estate of the deceased indemnitor.

The following cases, Kimpton v. Spellman, 351 Mo. 674, 173 S.W.2d 886; State ex rel. Patterson v. Tittmann, 134 Mo. 162, 35 S.W. 579; Finney v. The State, 9 Mo. 227; Miller v. Woodward et al, 8 Mo. 169; and, Leavenworth Savings & Trust Co. v.

Newman, D.C.Mo., 52 F.2d 813, were actions or claims against decedents' estates or distributees seeking recovery under guaranty or indemnity agreements similar to the one in this case and liability did not occur or accrue until after the death of the guarantor or indemnitor and after the expiration of the period for filing claims under the non-claim statutes. The courts held in these cases, either, impliedly or directly, that the claim was a contingent claim. The claims in the cited cases were similar to the instant claim and therefore these cases support the conclusion we have reached.

The non-claim statute, Section 473.360, supra, in the New Probate Code, enacted into law in 1955, included contingent claims within its provisions for the first time. This statute, passed in 1955, and as since amended, expressly provides that contingent claims be filed within nine months after the first published notice of letters testamentary or be forever barred against the estate, the executor or administrator, the heirs, devisees and legatees of the decedent. Contingent claims were not included in the non-claim statutes in force prior to the enactment of the New Probate Code in 1955. The decisions construing the prior non-claim statutes held that the statutes only barred ordinary claims, but not demands which arise where the liability under the contract is a contingent one. It was held in the cases that under the prior statutes the period of limitation did not begin to run until the liability under the contingent contract became fixed by the happening of the contingency. Kimpton v. Spellman, supra; Howard's Estate v. Howe, supra; Binz v. Hyatt, 200 Mo. 299, 98 S.W. 637; State ex rel. Patterson v. Tittmann, supra; Morgan v. Gibson, 42 Mo. App. 234. In Maus, Probate Law and Practice, Volume 4, Section 921, p. 210, it is said: "Prior to the 1955 Code the statutes of non-claim did not bar a contingent claim. * * *" In the Committee Comment following Section 473.360, supra, is the following "* * (2) it expressly bars contingent claims other than those based on warranties in conveyances, whereas such claims are not barred under the present law (Kimpton v. Spellman, 351 Mo. 674, 675, 173 S.W.2d 886); * * *." It is the purpose of the New Probate Code to provide a speedy method for administering a decedent's estate, to establish a time after which claims are forever barred against the estate, the executor or administrator, and the distributees, and to broaden the jurisdiction of probate courts to accomplish said purposes. North v. Hawkinson, Mo., 324 S.W.2d 733, l. c. 736; Steele v. Cross, Mo., 366 S.W.2d 434. It is evident that the drafters of the New Probate Code and the legislature determined it was as important that contingent claims be filed for allowance as that absolute claims should be so filed. This was done, no doubt, so that provision could be made for them before the estate was settled and it is apparent that the legislature had in mind that contingent claims be filed so that the executor may have an opportunity to investigate the merits of the claim. No particular harmful results are incurred by claimant from barring contingent claims if not presented within the time prescribed by the statute than results from barring absolute claims. This is true when we realize that Section 473.390, supra, gives protection for the payment of the contingent claim by a retention of assets in the estate or by other methods of payment.

■ It is the purpose of the non-claim statute in the New Probate Code to terminate all claims, whether due, not due, or contingent. Non-claim statutes have been held to be mandatory. Clarke v. Organ, Mo., 329 S.W.2d 670, 675. In view of the all inclusive terms of the non-claim statute, Sections 473.360 and 473.390, supra, we hold that Hartford was required to file and prove its contingent claim within nine months after the first published notice of letters testamentary, and having failed to so file, it was barred from filing the claim in the Probate Court when it became absolute.

However, Hartford contends that the Probate Court and the Circuit Court refused to recognize the applicability of the savings clauses of the New Probate Code as enacted in 1955, which in effect provide that no act done in any proceeding commenced before the New Probate Code took effect and no accrued right shall be impaired by the provisions of the New Probate Code. We fail to see the applicability of the savings clauses to the instant claim. It is clear that Hartford's present claim does not involve any proceeding commenced prior to the enactment of the New Probate Code nor, has any right accrued to it been impaired by the non-claim provisions of the New Probate Code. It is the position of Hartford that the indemnity agreement executed by the decedent, Bierman, in 1947, has incorporated in it the non-claim statute in force and effect in 1947. It claims that under the non-claim statute in force in 1947 its claim would not be barred. Hartford had no vested right in the non-claim statute in force and effect in 1947. It has been held that the non-claim statutes do not substantively affect a claim or cause of action and that the legislature may lengthen or shorten the non-claim period and may otherwise alter or change its procedural effect. Rabin v. Krogsdale, Mo., 346 S.W.2d 58; Potts v. Vadnais, Mo., 362 S.W.2d 543. The aforesaid cases point out that the non-claim statutes relate to remedies only and do not impair substantive rights and, as has been held, the legislature may enact a non-claim statute applying retroactively to claims against estates of deceased debtors if a reasonable time is allowed after enactment. State ex rel. Whitaker v. Hall, Mo., 358 S.W.2d 845. And in the Hall case it is said: " * * * 'The legislature has the power to increase the period of time necessary to constitute limitation, and to make it applicable to existing causes of action, provided such change is made before the cause of action is extinguished under the preexisting statute of limitations.' * * * " (l. c. 850)

Hartford had an adequate means of enforcing its claim. The existing non-claim statutes do not impair any substantive right of Hartford. The indemnity agreement executed by the decedent was not subject to the non-claim statutes in force and effect in 1947. The savings clauses have no application to Hartford's claim.

For the reasons heretofore given the order and judgment of the Circuit Court should be affirmed. It is so ordered.

WOLFE, P. J., and ANDERSON, J., concur.