47  345
q165 693

## Voris et al. *v.* The State, ex rel. Davis.

Demand.—*Suit on Guardian's Bond Against Heirs of Surety.*—An action may be maintained upon a guardian's bond against the principal and the heirs of a deceased surety without previous demand.

Amendment.—*Deemed to Have Been Made.*—An incomplete and ungrammatical sentence, in reference to the claim sued on being due and unpaid, that might have been amended in the court below, was deemed amended in the Supreme Court, so as to allege that the claim was due and unpaid.

Guardian's Bond.—*Liability of Estate of Surety.*—The estate of a surety upon a guardian's bond is liable for a default of the guardian which occurred subsequent to the death of the surety.

Same.—*Liability of Heirs of Surety.*—The heirs of a surety upon a guardian's bond are liable for a default of the guardian which occurred subsequent to the final settlement of the estate of the surety, where six months prior to such final settlement the ward was an infant, and the suit against such heirs is commenced within one year after the ward's majority.

Statute Construed.—*Creditor of Estate of Surety on Guardian's Bond.*—A guardian who brings a suit against a former guardian of his ward and the surety of such former guardian, on the bond of such former guardian, is the creditor of the estate of such surety, within the meaning of section 178 of the

act in reference to the settlement of decedents' estates, though the default of the guardian, for which suit is brought, occurred subsequent to the death. of the surety, and subsequent to the final settlement of the surety's estate.

From the Johnson Common Pleas.

*G. M. Overstreet* and *A. B. Hunter,* for appellants.

*S. P. Oyler* and *D. Howe,* for appellee.

BUSKIRK, C. J.—This action was brought by John W. Davis, guardian of Emily Vandine, against Armstrong Alexander, former guardian of the said Emily, and the appellants as the heirs at law of John T. Tucker, who was the surety of the said Alexander.

The complaint alleges that Armstrong Alexander was, on the 19th day of February, 1861, appointed the guardian of the said Emily Vandine, and as such gave bond with John T. Tucker as his surety; that as such guardian he received in money and property the sum of nine hundred and seventy-four dollars and ninety-nine cents; that in June, 1873, the said Alexander resigned said trust, at that time having in his hands the said sum of money by him received; that the said relator, John W. Davis, was appointed the successor of the said Alexander; that on the 16th day of June, 1863, the said John T. Tucker departed this life intestate, seized of certain described real estate, and leaving the appellants his heirs at law; that all of the personal estate had been exhausted in the payment of the debts of such estate; that such estate had been finally settled on the 19th of October, 1864; that the appellants were the owners of certain described real estate by descent from the said John T. Tucker; and, that as the said Alexander was hopelessly insolvent, judgment was demanded against the heirs of the said Tucker for the amount due from the said Alexander as guardian to the relator.

Alexander did not appear, but suffered judgment to go against him by default.

The appellants jointly demurred to the complaint, upon the ground that it did not state facts sufficient to constitute

a cause of action, but the demurrer was overruled, and an exception taken.

The appellants answered in four paragraphs, in substance, as follows :

1. The general denial.

2. That at the death of the surety, Tucker, on the 16th of June, 1863, there was in the hands of Alexander, of his ward's estate, three hundred and sixty-nine dollars and sixty cents, and no more, and that afterward he made a settlement with the court and fully accounted for the same.

3. That at the time of settlement of the estate of the surety, Tucker, there was in the hands of said Alexander, of his ward's estate, three hundred and sixty-nine dollars and sixty cents, and no more ; that at that time he was the owner of property of the value of ten thousand dollars, and so continued to be from the death of Tucker, June 16th, 1863, until January 1st, 1871 ; and that there was no breach of the conditions of his bond from its date to January 1st, 1871.

4. That at the time of the final settlement of the estate of John T. Tucker, there was in the hands of said guardian belonging to his said trust three hundred and sixty-nine dollars and sixty cents, and no more ; that after his failure and assignment for the benefit of creditors, his trustees paid to the relator said account and the interest thereon in full.

To the second, third, and fourth paragraphs of the answer demurrers were sustained, and exceptions taken.

The cause was submitted to the court for trial, and resulted in a finding for the appellee. The court found specially that Armstrong Alexander, former guardian of the said Emily Vandine, was indebted to the relator in the sum of six hundred and sixty-eight dollars and seventy cents, and the description and value of the real estate inherited by each of the appellants.

A motion for a new trial was overruled, and judgment rendered on the finding. It is provided in the judgment that it shall first be levied of the goods and chattels of

Alexander, and on failure to realize the same, it is to be levied of the lands of the appellants.

The appellants have assigned for error the overruling of the demurrer to the complaint and sustaining the same to the second, third, and fourth paragraphs of the answer.

Several objections are urged to the complaint.

It is, in the first place, argued that the complaint is bad for not showing when the moneys received by Alexander came to his hands, whether before or after the death of Tucker, the surety, and the settlement of his estate; and, also, for failing to show when the breach in the condition of the bond occurred, whether before or after the death of Tucker.

These questions, however, more directly arise upon the answer, and will be disposed of when we come to consider it.

It is, in the second place, insisted that the complaint is bad, because it does not aver that a demand was made of the heirs of Tucker before the commencement of the action.

If the action was against Alexander and Tucker, no demand would be necessary. It was the duty of Alexander, when he resigned, to pay the money to his successor. *Lane* v. *The State*, 27 Ind. 108; *The State, ex rel. Roberts*, v. *Fleming*, 46 Ind. 206; *Scott* v. *The State, ex rel. Roberts*, 46 Ind. 203. The liability of the surety is fixed by the failure of the principal, and there can be no liability against the heirs of the surety, unless the surety would be liable if living. Then, as no demand of the surety is necessary, we think none is required upon the heirs of such surety.

It is, in the third place, insisted that the complaint is defective for not averring that the money which was in the hands of Alexander at the time of his resignation remained due and unpaid at the time when the action was brought.

The complaint, after alleging the appointment of Alexander and the execution of the bond in suit, with Tucker as his surety, avers, that "afterward, and while so acting as such guardian of his said ward, there came into the hands of such guardian personal property of his said ward, amounting to

the sum of ———— dollars, and rents and profits of his ward's land, amounting to the sum of ———— dollars ; in all amounting to the sum of nine hundred and seventy-four dollars and ninety-nine cents ; that said sums, at the resignation of said guardian hereinafter alleged, still remains due and wholly unpaid."

The sentence is incomplete, ungrammatical, and senseless as it stands. If the words "remained and" were inserted after the word "alleged," the sentence would then read, "that said sums, at the resignation of said guardian hereinafter alleged, remained and still remains due and wholly unpaid."

The complaint in this regard was amendable in the court below, and will be regarded as amended here. *The State* v. *Cross*, 6 Ind. 387 ; *Langdon* v. *Bullock*, 8 Ind. 341 ; *Key* v. *Robinson*, 8 Ind. 368

In was held in *The State* v. *M'Clane*, 2 Blackf. 192, and the *State* v. *Cross, supra*, that in a suit upon an official bond payable to the State, the non-payment of the penalty need not be averred.

As we regard the complaint as amended good in this respect, we are not required to decide whether the same rule is applicable to actions on guardians' and administrators' bonds, and such bonds as are payable to the State, and yet are not official bonds.

We pass to the consideration of the answers. Two questions are presented and discussed by counsel.

1. Is the estate of Tucker liable for a default of Alexander which occurred subsequent to the death of Tucker ?

2. Are the heirs of Tucker liable for a default of Alexander which occurred subsequent to the final settlement of the estate of Tucker?

We think it is settled by the authorities that the estate of Tucker was liable for the default which occurred subsequent to his death.

In *Broome* v. *The United States*, 15 How. 143, it appeared that the bond of Crane as collector, with Swain and Macon, his sure-

ties, bore date the 2d day of June, 1837; that on the 4th day of July, 1837, the district attorney of the United States indorsed that the sureties were good and sufficient; that the bond was approved by the comptroller of the treasury at Washington on the 31st day of July, 1837, and that Arthur Macon, one of the sureties, died on the 24th day of July, 1837. In an action upon the bond against the administrator *de bonis non* of the estate of Macon, it was earnestly contended that the estate of Macon was not liable, because he died before the bond was accepted by the government. No question was made as to the liability of the estate of Macon for a defalcation which occurred subsequent to his death. It seems to have been conceded that if the bond was accepted before his death, his estate would be liable for a breach which occurred subsequent to his death. The court held that the bond became operative and effective by the approval of the district attorney, and the estate of Macon was held liable. The administrator of Macon was represented by a very learned and distinguished attorney, and the case seems to have been very closely contested at every point; and the failure of counsel to urge the objection under examination raises a very strong presumption that it was not regarded as sound and tenable.

In *Hall* v. *Martin,* 46 N. H. 337, it was held that the heirs of the grantor were liable to the grantee for a breach of the covenants of a deed, which occurred subsequent to the death of the grantor. The authorities are reviewed and they fully support the ruling.

In *Wood* v. *Leland,* 1 Met. 387, it appeared that Wood and Leland were sureties upon the bond of Harrington as guardian; that Leland died in 1836, and his estate was finally settled in 1834; that a breach of the bond occurred in 1837, which Wood, the surviving surety, paid, and this action was brought against the heirs of Leland to obtain contribution; and the court held that the heirs were liable to contribution in favor of the co-surety of their father.

In *Parsons* v. *Parsons,* 5 Cow. 476, it was held that the

heirs of the maker of a promissory note, which was indorsed subsequent to the maker's death, were liable to an indorsee of such note.

This leaves for our determination the second question stated, and that is, whether the heirs of Tucker are liable for a defalcation which occurred subsequent to the final settlement of his estate.

Section 62 of the act relating to the settlement of decedents' estates, 2 G. & H. 501, reads as follows:

"Sec. 62. A succinct statement of the nature and amount of every claim, whether due or not, against the estate of any decedent, except judgments which are liens upon the decedents' real estate, and mortgages of his real and personal estate obtained and executed in his lifetime, and expenses of administration, must be filed in the office of the clerk of the proper court of common pleas, within one year from the date of the first appointment of an executor or administrator therein, and notice thereof; or no cost shall be recovered therein against such executor or administrator; nor shall hereafter any other court have original jurisdiction of any claim, except such liens against the estate of any decedent; and, if such claim be not due, interest thereon shall be rebated, and after the expiration of one year from such appointment and notice, if such claim be not filed at least thirty days before final settlement of the estate, it shall be barred, except as hereinafter provided in case of liabilities of heirs and devisees."

The above section requires all claims, except such as constitute liens on the real and personal estate of the decedent, and expenses of administration, to be filed within a year from the appointment of the executor or administrator, and if not so filed thirty days before the final settlement of such estate, they are barred, except the claims are of such a character as to create a liability against the heirs, devisees, and distributees of such decedent.

The liability of heirs, devisees, and distributees is regu-

lated by sections 178 to 187 inclusive of said act. Section 178 is as follows:

"Sec. 178. The heirs, devisees and distributees of a decedent, shall be liable to the extent of the property received by them from such decedent's estate, to any creditor whose claim remains unpaid, who, six months prior to such final settlement, was insane, an infant, or out of the State; but such suit must be brought within one year after the disability is removed." 2 G. & H. 534.

By the above section, the heirs, devisees, and distributees of a decedent, although they may have received property from such decedent, are not liable to a creditor who failed to file his claim against such estate as required by section 62 of said act, unless such creditor was, for six months prior to such final settlement of such estate, insane, an infant, or out of the State, in which case the bar created by section 62 does not operate, and such creditor may bring his action within twelve months after the removal of the disability against such heirs, devisees, or distributees.

It is provided by section 186 of said act, that " no such suit shall be delayed, nor shall the remedy of a claimant be suspended by reason of the infancy of any heir, devisee, or distributee; but guardians to defend their rights in such suit shall be appointed as in other cases." 2 G. & H. 535.

It appears of record that the action is brought by the guardian of one of the former wards of Alexander, and that such person was at the time of such final settlement, and for six months prior thereto had been, an infant. Being such infant rendered the filing of the claim against such estate unnecessary; and while the action might have been brought, as it has been, before the infant became of age, yet, by section 178, *supra*, such infant was not compelled to sue before arriving at age. Section 186, *supra*, has exclusive reference to the infancy of any heir, devisee, or distributee, and has no application to an infant creditor of the estate.

It was held in *Yoast* v. *Willis*, 9 Ind. 548, that a creditor who resided out of the State for six months prior to the

making of the final settlement came within the exception mentioned in section 178, and was not affected by the statute of limitations prescribed by section 62 of said act; but it appearing in that case that the creditor had filed his claim but dismissed it before the final settlement, it was held that such filing of the claim amounted to a coming into the State, and that thereby he had ceased to be a non-resident.

But it is further contended by counsel for appellants, that they are not liable at common law for the debts of their ancestor, and that the only statutory provisions making heirs, devisees, and distributees liable in such cases, after the settlement of the estate of the decedent, are those embraced by sections 178 to 187 of the above recited act, and that those sections do not apply to the case in judgment, because the relator was not a creditor of the estate of their ancestor at the time of such final settlement, for the reason that no liability existed against Tucker at the time of his death, or against his estate at the time of the final settlement of his estate, the default of Alexander having occurred subsequent to both of such events.

The question as to whether the appellants are liable at common law does not arise in this case, and we decide nothing in reference thereto.

It was held by this court in *Freeman* v. *The State,* 18 Ind. 484, and *Hartman* v. *Lee,* 30 Ind. 281, that the above sections were the only statutory provisions creating a liability against heirs, devisees, and distributees for the debts of the ancestor.

This leaves for our examination and decision the question as to whether the relator was, within the meaning of section 178, a creditor of the estate of Tucker.

In *Parsons* v. *Parsons,* 5 Cow. 476, the court say: "The first question is, was the plaintiff a creditor of the deceased?

"By the first section of the act (1 R. L. 316), every creditor, whether by simple contract or specialty, may maintain his action against the heirs at law of any debtor.

" At the common law, the heir was not liable on the simple contract of his ancestor; nor on a specialty, unless the heir was named. The intent of the statute was, to enlarge the remedy. That is done in general terms, by saying every creditor may maintain his action. As this is a remedial statute, it should be construed liberally, so as to advance the remedy. Every person, who holds a demand arising on simple contract or specialty, seems to be within the meaning of this section. Such persons are certainly creditors within the general acceptation of the term, whether a right of action accrued in the lifetime of the deceased; or subsequently, by the transfer of negotiable paper. They would be recognized as such in a course of administration. There is nothing in the words of the section confining the remedy to persons who were creditors of the ancestor at the time of his death. If such be the construction, great inconveniences would result. In the case of an assignment by an insolvent debtor, who was the payee of a note, if the assignee is not a creditor within the meaning of the act, there is no remedy at law against the heir; for the insolvent cannot sue. So, also, the executors of a deceased payee of a note may not be creditors of the deceased maker in his lifetime; and yet it would not, I apprehend, be contended that they would be without the act, because the maker happened to die before their testator."

In *Hall* v. *Martin,* 46 N. H. 337, the court say: " Again, it is very clearly the policy of our statutes to give to all a reasonable opportunity to prove their claims, and to share in the distribution of the assets; and with that view the assets are all placed in the hands of the executor or administrator, and opportunity given during a limited time to make proofs of claims and receive payment; and thereupon the assets remaining are distributed among the heirs and devisees, and others entitled to them; saving to such creditors as could not prove their demands during the time limited, for the reason that they were wholly uncertain and contingent, their remedies against the heirs and devisees. Such are the general features and policy of our laws upon this sub-

ject, and to justify a construction of any special provision that would cut off all remedy upon a contract of indemnity or a covenant in a deed of land, would require a pretty clear expression of legislative intention, more so than any we find in the provisions in question.

" The cases are numerous where it would be practically impossible to make proof of claims while estates were in the course of administration. Among these are covenants of warranty of title to land where the breach had arisen long after the covenantee had himself conveyed with warranty, contracts of indemnity where the breach and the damages are both wholly uncertain, official bonds of sheriffs and their deputies involving complicated questions of suretyship and otherwise, individual liabilities of corporators involving great difficulties in adjusting the claims against each, and a variety of other cases of a similar nature equally meritorious with those claims which were in a situation to be proved while the estates were in the course of administration ; and it would clearly be not only unjust, but contrary to the policy both of the common law and our own statutes, that their claims should be unpaid while there were sufficient means left by the debtor to discharge them.

" If it were to be conceded that the legislature possessed the constitutional right to bar claims that could not be presented and proved during the time limited, it would nevertheless be so repugnant to all notions of justice as to forbid such a construction unless the intention was very clearly expressed. If the demands had not accrued until the expiration of the limited time, a law which should cut off the remedy would in its effect be the same as the destruction of the right, and such an intention is not to be presumed."

In our opinion, the relator was a creditor of the estate of Tucker, within the meaning of the above section.

We think the court committed no error in overruling the demurrer to the complaint, or in sustaining it to the second, third, and fourth paragraphs of the answer.

The judgment is affirmed, with costs.