**BENNETT, Adm'r, v. CHECOTAH STATE BANK.**

No. 25745. April 14, 1936.

Joe M. Whitaker (Charles Whitaker, on the brief), for plaintiff in error.

B. H. Tabor, for defendant in error.

PHELPS, J. A note payable to the plaintiff bank, signed by Alston and Floyd, contained the following provision:

"The makers and indorsers hereof hereby severally waive protest, demand and notice of protest and nonpayment in case this note is not paid at maturity, and agree to all extensions and partial payments before or after maturity without prejudice to holder."

Dyton Bennett was guarantor of payment of the note, having for valuable consideration signed the following memorandum on the back of the note when it was made:

"For value received, I * * * do hereby guarantee * * * the payment of the within note with interest and attorney's fees, as therein stated, and consent to any extension of time or renewal of the same."

Dyton Bennett died before maturity of the note and while it was still unpaid. After his death several extensions of time were granted by the payee (plaintiff) to the makers, neither with nor against the consent of the administrator of the deceased guarantor's estate. The payee bank recovered a judgment against said administrator, who appeals.

The consideration for the note was the loan of a certain sum of money by the bank. It is claimed that this money really went to the guarantor. The entire amount was loaned and delivered at the time the note was made, and neither the note nor the guaranty contemplated the passing of any further consideration nor vested in the makers any right to demand further loans of money. In other words, the entire consideration passed at the time of the signing of the contract; the consideration was entire and executed. The note promised payment of only the loan made at the time of its execution, and the guaranty did not guarantee payment of any future loans to the makers.

the extent of the undertaking in that respect being limited to further extensions or renewals of the same debt, which was a debt for an entire and indivisible consideration which had already passed.

Without stating them, it is sufficient to say that there are three propositions advanced by the plaintiff in error, who was defendant in the trial court. and they are arranged progressively; that is, the ultimate result of the argument is dependent on the correctness of each proposition therein, the applicability of each proposition being predicated upon the correctness of the preceding proposition. It therefore follows that the success of the appeal depends upon the soundness of every link in the plan of argument, and that if any one of the said propositions fails, the entire appeal must fail. We have given careful study to each proposition advanced by plaintiff in error, but it is unnecessary to discuss any of the propositions except the third one, which is to the effect "that the estate of the deceased guarantor was released from liability by extensions of the note after his death," the theory being that such extensions created new contracts to which the guarantor, being dead, obviously could not agree.

Guaranties are divided into two classes: First where the entire consideration from the creditor passed at the time of the signing of the contract: second, where the consideration passes at different times and therefore is divisible or separable. The instant case is of the first class, and that class of guaranty is not revocable by the guarantor. If the guaranty authorizes extensions or renewals of such a debt, that provision is as binding upon the guarantor as is the fact of guaranty of payment of the debt itself. The owner of such a note may extend the time of payment without the consent of the guarantor. Stetler v. Boling, 52 Okla. 214, 152 P. 452. "Where the consideration has wholly passed the guaranty cannot be revoked." Stearns on Suretyship (4th Ed.) 94. It is obvious that such must be the law. for where the creditor parts with the entire consideration at the time of the contract, it may be that he would not have consented to do so unless the guarantor had first agreed to possible future extensions of time. Thus the creditor has obtained the right to extend or renew the obligation without losing the guaranty, and for that right he has parted with consideration. In that class of cases, then, where the consideration has wholly passed and the guarantor has agreed in advance to

extensions, he cannot prevent the creditor from extending or renewing the note or contract, and if extensions or renewals are granted, the guarantor is still bound and the power of revocation is beyond him.

We now consider the effect of the guarantor's death. Where the guarantor might revoke the guaranty during his lifetime, it is usually revoked by his death, but this is not true as to a guaranty which could not be revoked by the guarantor during his lifetime. It is said in Stearns on Suretyship (4th Ed.) 184:

"The death of the surety or guarantor, where the contract is executed, and the consideration passed, does not revoke the obligation, and the estate of the promisor will be liable for default committed subsequent to the death."

The rule that where the consideration is entire and has been executed the guaranty is not revocable by the guarantor, and that if he could not revoke the guaranty by notice in his lifetime his death does not revoke it, is thoroughly ingrained in the law. See authorities cited in Stearns, supra, 84; 14 A. & E. Encyc. of Law (2d Ed.) 1159; 13 C. J. 713; Brandt, Suretyship, sec. 113; Chitty on Contracts (10th Ed.) 101; 12 R. C. L. 1088, note 10.

Now to the question of extensions after death of the guarantor. Confusion on this question is avoided by keeping in mind the fact that in the instant case the consideration was executed, entire, and indivisible, and that this is not that kind of guaranty which insures payment of future additional obligations or future additional indebtedness. In view of the rule that death of the guarantor does not revoke the guaranty in cases such as the instant one, it follows that death did not revoke **any part** of said guaranty. The guaranty included the right in the creditor to give extensions. The grant of that right was an act which took place **in the guarantor's lifetime.** It therefore is inappropriate to argue that "dead guarantors can make no new promises", for the right of renewal and extension did not here depend on any implied new promise, but was derived from the old promise, made by the guarantor at the inception of the contract. That promise related to the fulfillment of the contract entered into at that time, for which the entire consideration passed at that time, and is as binding upon the estate of the promisor as any other right of property he may have vested in other parties during his lifetime. There was no necessity for the implication of new promises of guaranty coincident with

520

the creditor's parting with new or additional consideration (as in the second class of guaranties mentioned above, in which death would have revoked the guaranty), for neither did the creditor furnish any new or additional consideration nor would such have been authorized by the terms of the guaranty. In extending the original debt the creditor merely exercised a right which was vested in it by and during the lifetime of the guarantor at the inception of the contract of guaranty, and no implication of a new or fresh consent was necessary. It follows that the extensions did not operate to relieve the guarantor's estate from liability. The judgment is affirmed.

OSBORN, V. C. J., and BUSBY, CORN, and GIBSON, JJ., concur.