# 𝔖taunton

THEODORE LOONEY AND CARL E. LOONEY V. BARTLEY
BELCHER.

September 23, 1937.

Present, All the Justices.

The opinion states the case.

BROWNING, J., delivered the opinion of the court.

The facts of this case are, in brief, these: In April, 1921, there were two banks operating in the town of

Grundy, Virginia. One was the Bank of Grundy, Incorporated, a State bank; the other was the First National Bank of Grundy. Prior to April 9, 1921, a customer of the Bank of Grundy, Fred Vandyke, had on deposit in that bank, $43,760, represented by six certificates of deposit. Three of these certificates were for the sum of $10,000 each and one for $10,200. The others were for lesser amounts.

It appears that the Bank of Grundy was doing business in an old and unimpressive building, without the modern safety appliances and conveniences. Its rival, the First National Bank, was operating in a more modern building, with superior vault facilities.

Officials of the latter bank made an effort to induce Vandyke to place a portion of his money on deposit in their bank, emphasizing its physical safety advantages. This effort succeeded to the extent of Vandyke's assignment of two of his $10,000 certificates to the First National Bank, which issued its certificates to him for like amounts. The Bank of Grundy certificates were presented to it on the following day for payment, in due course, which would have resulted in the transfer of $20,000 from the one bank to the other. The cashier of the Bank of Grundy and H. Claude Pobst, one of its directors, went posthaste to the home of Mr. Vandyke and persuaded him to abandon the transfer that he had in mind and leave his deposits, intact, in their bank. As an inducement for him to do this, and to create in him a feeling of security in continuing his deposits in the Bank of Grundy, the officers of this bank agreed to give him their bond securing and guaranteeing any loss which might accrue to him on account of these deposits.

This method of making Vandyke safe apparently satisfied him for he made no further efforts to withdraw his money until some eighteen months thereafter he withdrew $35,000 for the purpose of paying for a farm which he had bought in Ohio upon his removal from Virginia to that State, in 1922 or 1923.

The bank renewed his certificates of deposit annually and sometimes semi-annually, paying or adding in the accrued interest which had been earned. Vandyke, though residing in Ohio after 1923, retained property interests in Buchanan county, Virginia, Grundy being the county seat, and he returned there each year, and sometimes oftener, to collect his rents, pay taxes, etc. Thus he continued to do business with the bank, and when it failed, in May, 1931, he had on deposit with it the sum of $10,000, represented by a certificate of deposit dated November 1, 1930, which was a part of the original deposit made in 1921. He had kept, through the intervening years, the bond of guaranty before referred to. Just after the bank closed he sought the advice of his attorney, in connection with the bond, for what purpose does not appear in the record, but supposedly for information as to its validity. Thereafter, it became misplaced or lost and was found some two years afterward.

In 1934, Vandyke went to Grundy with the bond and demanded payment of the amount of his deposit from the receiver of the Bank of Grundy and being unsuccessful in this effort he demanded payment of the money from the sureties on the bond. One of these sureties was John A. Looney, who was the president of the bank and a director at the time of the execution of the bond and at the time of his death, which was in April, 1922.

Mr. Pobst, who was also a director of the Bank of Grundy and one of the sureties or guarantors by virtue of the provisions of the bond, became the administrator of the Looney estate and the guardian of the three children, two of whom are the appellants here.

The shares of stock of the Bank of Grundy belonging to the estate of John A. Looney were distributed to his heirs at law, two of whom are the appellants in this suit, and the appellants sold their shares before the bank failed. All of his heirs at law are solvent and own sufficient real estate, which was derived from the estate of their father, to pay

the amount for which their father was liable on the bond of guaranty.

In 1935, after Vandyke had demanded payment from the sureties on the bond, three of them, who were solvent, Bartley Belcher, F. H. Combs and H. Claude Pobst, realizing their liability on the bond, by treaty with Vandyke at his home in Ohio, effected a compromise with him by the payment of $9,000 and incurring the costs of the negotiations. Thus a saving of more than $1,000 to the sureties was accomplished through the efforts of those mentioned.

They subsequently called upon the appellants to pay the portion of the $9,000 which their father would have been liable for had he been living. They declined to pay the amount or any part thereof.

These facts and circumstances resulted in this suit by the appellees against the appellants for contribution.

It may be here noted that upon the payment of the $9,000 in full settlement of the Vandyke claim he assigned to the appellees the certificate of deposit and the surety bond.

Two of those who were sureties and bound on the bond were not in a financial state to pay anything, but those who did pay agreed to give them time in which to discharge their obligation. A judgment was secured against another for his part and still another was hopelessly insolvent.

The trial court held that the appellants were liable to the appellees for one-seventh of the amount which they paid to Vandyke and decreed accordingly. From that decree an appeal was allowed by this court.

The surety bond sued upon is as follows:

"Whereas, one Fred Vandyke has on time deposit with the Bank of Grundy, of Grundy, Virginia, the sum of $43,760, represented by 6 time deposit certificates, three of them being for ten thousand dollars each, and one for $1,560.00, those four being dated the 7th day of April, 1921, and one being for $10,200.00 dated 23rd day of December, 1920, and one for $2,000.00 dated January 27, 1921; and

"Whereas, the undersigned are stockholders of said Bank of Grundy, a corporation.

"Now, therefore, in consideration of the said Fred Vandyke making these deposits with said bank, the undersigned do hereby jointly guarantee to him, the said Fred Vandyke, that they will make good any loss which may accrue to him on account of these deposits, and do hereby promise and guarantee that the said Bank will, when requested by the said Fred Vandyke, his heirs or assigns, pay over to the said Vandyke the amounts represented by said certificates of deposit, together with interest on same to the date of payment; and if said bank does not do so, then the undersigned hereby promise and bind themselves to pay said certificates of deposit, with interest to date of payment, and in case the said Fred Vandyke, his heirs or assigns, shall ever have to bring suit on this paper, then the undersigned hereby agree to pay to his attorney five (5%) per cent on all amounts so collected by said attorney, as an attorney's fee for bringing said suit, together with the Court costs of said suit; thus saving the said Fred Vandyke entirely harmless in this matter.

"Witness the following signatures and seals, this April 9, 1921.

|  |  |
|---|---|
| JOHN A. LOONEY | (Seal) |
| GEO. BELCHER | (Seal) |
| B. BELCHER | (Seal) |
| H. CLAUDE POBST | (Seal) |
| E. E. SMITH | (Seal) |
| E. R. BOYD | (Seal) |
| F. H. COMBS | (Seal) |
| W. L. DENNIS | (Seal)" |

There are two assignments of error in which a number of defenses are urged. We shall discuss them in a rather general way.

First, the validity of the bond is assailed because it is alleged that there was no consideration deemed valuable in law for its execution. The circumstances and facts which

brought the bond into existence and its recitals negative this position. The evidence tends to show that the bank was a small country institution which was struggling along; that it had a rather alert and vigorous rival in the field of operation; that one who could make time deposits of the dimensions and importance of those made by Vandyke meant much to it; that Vandyke was a careful man of some business acumen; that he had begun to feel a little uneasy about the safety of his savings. It was a large sum and he did not feel quite secure with all of his eggs in one basket. He determined to divide it between the two banks but was induced to relinquish this plan because of the willingness of his financial friends and those in whom he had confidence to make him safe by the security which they suggested and proffered to him.

This state of facts shows the forbearance of Vandyke to insist upon a scheme of greater safety and adopt that of others who were unquestionably advantaged and benefited by such forbearance. If these elements, in their setting, do not constitute consideration—aye, valuable consideration—which will support a contract then we have misconceived the law.

In the case of *Ballard* v. *Burton*, 64 Vt. 387, 24 A. 769, 771, 16 L. R. A. 664, the case of *Burr* v. *Wilcox*, 13 Allen (Mass.) 269, 273, was approvingly quoted as aptly defining the term "consideration." It was in these words: "Any act done at the defendant's request, and for his convenience, or at the inconvenience of the plaintiff, would be sufficient."

Consideration means, not so much that one is profiting, as that the other abandons some legal right in the present. Pollock on Contracts, page 166.

1 Parsons on Contracts, page 442, treating the subject under consideration, says: "Nor need the agreement to delay be for a time certain, for it may be for a reasonable time only, and yet be sufficient consideration for a promise."

"However, in order to render one other than the bank liable on the certificate, there must be some consideration

for his contract; forbearing to withdraw money from a bank for a reasonable time has been held a sufficient consideration for the signing by a third person as surety of another certificate of deposit in place of a former one which is surrendered." 7 American Jurisprudence, Banks, page 354, section 495.

A guaranty of a certificate of deposit by an officer of a State bank was sustained as against the objection that the guaranty was without consideration, the court holding that the extension of time of payment of the certificate was a sufficient consideration. *Rattelmiller* v. *Stone,* 28 Wash. 104, 68 P. 168; *Sickles* v. *Herold,* 11 Misc. 583, 32 N. Y. S. 1083; *Garren* v. *Youngblood,* 207 N. C. 86, 176 S. E. 252, 95 A. L. R. 1132.

▇ There can be no question about the presence of a consideration sufficient to support the guaranty bond in the suit in judgment.

It is further urged, in support of the charge of error committed, that Vandyke was guilty of laches in delaying to assert his rights and pursue his remedy.

The bond is without condition as to when the bank would pay the deposits and consequently the time for payment by the sureties was indefinite. They were only to perform when defaulted.

▇ "Where there is nothing to show when the principal debt matures, there can be no such extension of time as to discharge the guarantor, * * * .

▇ "So, also, where the guaranty is of a continuing nature and does not limit or restrict the period of credit, any reasonable change as to the length of the credit will not relieve the guarantor from his liability thereunder, unless the extended period materially changes the contract of guaranty." 28 C. J., page 1003, section 163.

▇ "Where, however, it is apparent from the language of the guaranty in connection with the surrounding circumstances existing at the time it was executed that it was the guarantor's intention to leave the time and amount open to cover a series of transactions, the guaranty will be con-

strued as a continuing one; but the time and amount must be reasonable under the circumstances of the particular case." 28 C. J., page 960, section 109.

Where the guaranty is absolute it has been held that demand and notice were unnecessary. *Read* v. *Cutts*, 7 Me. (7 Greenl.) 186, 22 Am. Dec. 184.

In the same case, with respect to the defense of laches, it was said that it has been repeatedly decided that mere delay to pursue the principal and collect the money of him does not discharge a surety or guarantor provided such delay be unaccompanied by fraud, or an agreement not to prosecute the principal, made without the assent of such surety.

Of course, laches could not be urged against the appellees independently, because their cause of action did not arise until 1935, when the settlement was had with Vandyke.

It was said, in the case of *Rapelye* v. *Bailey,* 5 Conn. 149, 13 Am. Dec. 49, in relation to the interpretation of a letter of credit given by Bailey to Rapelye requesting the latter to furnish his brother certain merchandise for a certain amount and if he should not fulfill his contract, he, the defendant, would be accountable for the payment: "The words of the contract ought to be taken as strongly against the defendant as the sense of them will admit. If a limitation was intended as to the time or manner of delivery, why was it not specified as was the limitation as to the amount?"

In the case last named the case of *Merle* v. *Wells,* 2 Camp. 413, was cited and considered. It involved the construction of a guaranty contained in a letter from the defendant to the plaintiffs, in which he said: "I consider myself bound to you for any debt my brother may contract, not exceeding one hundred pounds, after this date." The plaintiffs continued to supply the brother with goods in his business for more than a year; during the time they had several times balanced accounts with him, and he had paid them more than the sum of one hundred pounds. It was urged

that the defendant's guaranty was limited to the first one hundred pounds advanced by the plaintiffs.

"I think," said Lord Ellenborough, "the defendant was answerable for any debt not exceeding one hundred pounds which William Wells might, from time to time, contract with the plaintiffs in the way of his business. The guaranty is not confined to one instance, but applies to debts successively renewed. If a party means to be a surety only for a single dealing, he should take care to say so. By such an instrument as this, a continuing suretyship is created to the specific amount."

There is no merit in the defense of laches.

It is also urged that the death of John A. Looney ended any liability that might have attached to him during his lifetime under the provisions of the guaranty bond. It is contended that the burdens of the bond must be discharged, if at all, by the survivors of the sureties. It is insistently argued that such burdens did not descend, as a charge upon Looney's estate or his heirs.

The Virginia statute, section 5762 of the Code, seems to settle this phase of the matter contrary to the contention of the appellants. This statute provides:

"If one bound with another, either jointly or as a partner, by a judgment, bond, note, or otherwise, for the payment of a debt, or the performance or forbearance of an act, or for any other thing, die in the lifetime of such other, the representative of the decedent may be charged in the same manner as he might have been charged, if those bound jointly or as partners, had been bound severally as well as jointly, otherwise than as partners."

This statute is applicable to the case in hearing, but, if it were not in existence, the law, as expressed in the very recent case of *United States* v. *Chain*, 300 U. S. 31, 57 S. Ct. 394, 396, 81 L. Ed. ——, through Mr. Justice Van Devanter, in the following quotation, is quite conclusive of the matter:

"It is a presumption of law that the parties to a contract bind not only themselves but their personal representatives.

Executors, therefore, are held to be liable on all contracts of the testator which are broken in his lifetime, and, with the exception of contracts in which personal skill or taste is required, on all contracts broken after his death." See 1 Chitty, Contr. (11th Am. Ed.) 138; 2 Parsons, Contr. (6th Ed.) 530, 531.

It is further said in the same case: "In a long line of decisions relating to bonds not distinguishable from the one in suit it has been held that a surety's obligation does not terminate with his death but binds his personal representative for past and subsequent defaults, as it would bind him if living. The principle underlying these decisions is the same that prevails in respect to other related contracts, and we regard it as well sustained in reason and supported by the preponderant weight of authority."

The text above is supported by the following list of authorities: *Broome* v. *U. S.*, 15 How. 143, 14 L. Ed. 636; *Hecht* v. *Weaver* (C. C.) 13 Sawy. 199, 34 F. 111; *U. S.* v. *Keiver* (C. C.) 56 F. 422, 423; *Fewlass* v. *Keeshan* (C. C. A. 6th) 88 F. 573, 574; *Pond* v. *U. S.* (C. C. A. 9th) 111 F. 989, 997; *Re Crace* (1902) 1 Ch. 733, 2 B. R. C. 929; *Calvert* v. *Gordon,* 3 Man. & R. 124; *Green* v. *Young,* 8 Me. (8 Greenl.) 14, 22 Am. Dec. 218; *Royal Ins. Co.* v. *Davies,* 40 Iowa 469, 20 Am. Rep. 581; *Moore* v. *Wallis,* 18 Ala. 458; *Knotts* v. *Butler,* 10 Rich. Eq. (31 S. C. Eq.) 143; *Hecht* v. *Skaggs,* 53 Ark. 291, 13 S. W. 930, 22 Am. St. Rep. 192; *Shackamaxon* v. *Yard,* 150 Pa. 351, 358, 24 A. 635, 30 Am. St. Rep. 807; *Mundorff* v. *Wangler,* 44 N. Y. Super. Ct. (12 Jones & S.) 495, 496; *Voris* v. *State,* 47 Ind. 345, 349, 350; *Exchange Bank* v. *Barnes,* 7 Ont. Rep. 309, 320; *Snyder* v. *State,* 5 Wyo. 318, 323, 40 P. 441, 63 Am. St. Rep. 60.

The authorities quite universally hold that in the construction and interpretation of a bond of warranty or other paper executed for the same purpose it is important to consider the circumstances and the parties and the natural and normal reasons which impel them, which obtain in the particular case.

In the case of *Boehne* v. *Murphy*, 46 Mo. 57, 2 Am. Rep. 485, it was said, through Bliss, J., in speaking of the proper interpretation of a letter of credit: "But I do not know that there is any special rule that applies to this class of writings, and Chancellor Kent (2 Com. 557) thus states the rule that should govern us in the construction of all contracts: 'The modern and more reasonable practice is to give the language its just sense, and to search for the precise meaning, and one requisite to give due and fair effect to the contract, without adopting either the rule of a rigid or of an indulgent construction. * * * The true principle of sound ethics is to give the contract the sense in which the person making the promise believed the other party to have accepted it, if he, in fact, did so understand and accept it.' "

When the rule of construction which is so impressively stated in the above case, is applied to the bond of warranty in the case we have before us it seems plain that the decree of the trial court is without error. It is important to remember the purpose which the parties had in mind when the bond was executed. That of the sureties was to fortify their bank, and a heavy line of deposits is one means of accomplishing this; that of Vandyke was to accommodate his business friends by forbearing to withdraw his money from their bank, if he could do so with safety, and the guaranty of his friends satisfied him and, in his judgment, eliminated from the transaction the element of hazard. It was not a single transaction, to be done with, but it contemplated changes and substitutions by a course of dealing in the future. It was a continuing contract of guaranty, absolute and definite as to its purpose but indefinite as to time and the exact details of the future dealings between Vandyke and the bank.

In the case of *White's Bank* v. *Myles*, 73 N. Y. 335, 29 Am. Rep. 157, we find this:

"Precedents do not help much in the construction of such instruments. The dividing line between those which are limited and those which are continuous, is not always

plainly seen, and cases apparently quite similar are sometimes found upon one side of it, and sometimes upon the other. Where there is uncertainty upon the face of the instrument, its construction must necessarily depend upon the circumstances which throw light upon it, and hence the diversity."

*Krekel, Adm'r, &c.* v. *Thomasma,* 255 Mich. 283, 238 N. W. 255, 81 A. L. R. 786, presents a case very like the one in judgment. There an action was brought by the administrator of the estate of Henry Krekel for contribution by his coguarantors on a guaranty contract. It was held that the guaranty was a continuing one. The guarantors were liable until they gave notice of discontinuance. They never gave such notice and, therefore, their liability continued.

The case of *Holmes* v. *Elder,* 170 Tenn. 257, 94 S. W. (2d) 390, 392, 104 A. L. R. 1282, involved the construction of a bond to secure the deposits, to the extent of $20,000, of a clerk of a chancery court in a certain designated bank. There were a number of sureties on the bond, as well as the bank, which was the principal. The bank failed and suit was brought by the depositor against the sureties and recovery by the plaintiff was sustained by the Supreme Court of Tennessee. It was there said:

"A guaranty may be continuing or it may be exhausted by one act. The governing principle is this: When it appears that the guaranty looked to a future course of dealing for an indefinite time, it is a continuing guaranty limited only as to amount prescribed."

Quite an informative case on the subject is *Frieden* v. *Cluett,* 142 Va. 738, 128 S. E. 61. We shall forbear quoting from it lest this opinion should become prolix.

A number of authorities have been cited by both sides. Most of the Virginia cases to which we have been pointed by the appellants were decided before section 5762 of the Code of Virginia came into existence, and the authorities (which are not found in the briefs but were handed to the court during the argument of the case) are not in point.

We think that our discussion has specifically or impliedly embraced all of the issues in this case. We shall content ourselves to close this opinion by the expression of this thought: The parties affected by the contract which we have considered could have inserted therein plain words of limitation and condition, but they did not choose to do so. We cannot, by construction and interpretation, import these words and effect a significance which they did not elect to consummate. In other words, the courts cannot make contracts for persons.

We affirm the decree of the trial court. It is eminently correct.

*Affirmed.*