STATE of Missouri at the Relation of Oral
H. McCUBBIN, Administrator of the Estate
of Edward Pace, Deceased, and Houston
Fire & Casualty Company, a corporation,
Relators,

v.

Hon. Theodore McMILLIAN and Hon. Frank-
lin Reagan, Judges of the Circuit Court
of the City of St. Louis, Missouri, Respond-
ents.

No. 30474.

St. Louis Court of Appeals.

Missouri.

July 18, 1961.

Motion for Rehearing or to Transfer to Su-
preme Court Denied and Opinion Modified
on Court's Own Motion Oct. 17, 1961.

Harry M. James, Wilbur C. Schwartz, Joseph Nessenfeld, Schwartz, James & Sweet, St. Louis, for relators.

Moser, Marsalek, Carpenter, Cleary, Jaeckel & Hamilton, John S. Marsalek, St. Louis, for respondents.

BRADY, Commissioner.

■ This is an original proceeding in prohibition wherein a writ is prayed for prohibiting respondents from exercising jurisdiction over the persons of relators and from hearing and ajudicating a cross-claim filed in an action pending in the Circuit Court of the City of St. Louis. The function of the petition for the writ and return are well known. Together with a reply, they form the pleadings in a prohibition proceeding, §§ 530.030, 530.040 RSMo 1949, V.A.M.S. The pleadings in the instant case are lengthy and involved, and a better understanding of the factual situation can be had if they are summarized, showing regard while doing so for the rule that all material matters not denied by the return are deemed admitted, State ex rel. Burton v. Montgomery, 316 Mo. 658, 291 S.W. 472, and, since the relators filed no reply, that the allegations of new matters contained in the return are deemed admitted, State ex rel. Hannigan v. Kirkwood, 342 Mo. 242, 114 S.W.2d 1026.

As so summarized, the facts are that Edward Pace and Dr. Leland Jensen had an automobile accident in Lawrence County, Missouri, on February 8, 1953, in which Ray Snyder, a passenger in the Jensen automobile, was injured and Pace was killed. Snyder and Jensen were residents of the City of St. Louis, and Pace was a resident of Houston, Texas, and was passing through Missouri when the accident occurred. American Automobile Insurance Company, a resident of the City of St. Louis, hereinafter referred to as American, had a policy of liability insurance with Jensen whereby it agreed to pay on his behalf all sums not to exceed $25,000 which he should become legally obligated to pay because of bodily injuries sustained by any one person arising out of the use of the automobile he was operating at the time of the collision. Pace had a policy with Houston Fire & Casualty Company, hereinafter referred to as Houston, a corporation organized under the laws of Texas, whereby Houston agreed to pay on his behalf all sums not to exceed $50,000 which Pace should become legally obligated to pay because of bodily injuries sustained by any one person arising out of the use of the automobile which Pace was operating at the time of the collision. This policy was entered into, executed and issued in the State of Texas, and Houston is a resident of Texas but is licensed to do business in Missouri and has filed its duly executed power of attorney appointing and authorizing the Superintendent of Insurance of this state to acknowledge and receive process in any action against it instituted in this state as provided by § 375.210 RSMo 1949, V.A. M.S. By the terms of its policy with Pace, Houston agreed to defend and investigate

any suit against him and undertook Mc-Cubbin's defense in Snyder's damage suit and was in charge and control of that defense, and could make such negotiation and settlement of any claim filed against Pace or his estate as it deemed expedient. Upon application to the Probate Court of Lawrence County, that court appointed the relator McCubbin as administrator for Pace. Snyder filed his action for damages arising out of the collision in the Circuit Court of the City of St. Louis, and named as defendants Jensen and McCubbin as administrator of Pace's estate. This case resulted in a verdict for Snyder against Jensen and McCubbin in the amount of $35,000. The judgment remained unsatisfied for more than thirty days, and Snyder then filed an action in the Circuit Court of the City of St. Louis under the provisions of §§ 379.195 and 379.200 RSMo 1949, V.A.M.S. to reach and apply the insurance money provided in the policies to the satisfaction of his judgment. The petition is before us as Exhibit A, and was filed against Jensen, McCubbin, American and Houston. Jensen was never served and has never entered his appearance in the suit. McCubbin was served with process in Lawrence County, and Houston was served through the Department of Insurance. American is a resident of the City of St. Louis and was served in the City of St. Louis. Houston undertook the defense of the equity action also, and has remained in control of that defense, in the conduct of which it has confined its appearances and those of McCubbin to special appearances for the purpose of raising the questions of jurisdiction and venue with which we are dealing, and filed their motions to dismiss the equity suit, Exhibits B and C. Snyder sought to compel American and Houston each to pay to him the amount due on the aforesaid judgment of $35,000, and in addition prayed for the sum of $3,500 for vexatious refusal to pay as against Houston, and for the sum of $2,500 for vexatious refusal to pay as against American. American, by amended answer, Exhibit D, filed July 2, 1957, joined a cross-claim against Houston and McCub-

bin, and affirmatively alleged that on October 17, 1955, five days after the equity action was filed, it had paid Snyder $17,500, or one-half of the judgment, together with interest thereon. In its cross-claim contained in its amended answer, American alleged that should judgment be rendered against it for any amount in excess of what it had paid, American should be awarded a judgment in like amount against Houston and McCubbin. On July 5, 1957, Snyder filed his motion for judgment against American on the grounds that there were no issues of fact for determination between Snyder and American. On July 22, 1957, Houston and McCubbin, still appearing specially only, filed their verified motions, Exhibits E and F respectively, to dismiss American's cross-claim. Snyder then dismissed his action against Houston and McCubbin, and on the same day, July 23, 1957, entered into an agreement with Houston under terms of which Houston paid Snyder $10,000 and interest, by way of compromise of Snyder's claim against Houston and McCubbin, which sum, under that agreement, constituted payment in full by Houston to Snyder of all sums due him under the judgment action over and above what American had paid, and by doing so, recognized the direct obligation on its part to Snyder arising out of the judgment in the damage suit action. On August 2, the trial court sustained Snyder's motion for judgment against American, and American was ordered to pay Snyder the sum of $7,500 and interest, and on August 23, Snyder acknowledged satisfaction of that judgment. The return also alleged that in addition to the liability of Houston to Snyder and to American by reason of the cross-claim, Houston was rendered liable by the laws of Texas for the payment of Snyder's judgment and for the amount prayed in the cross-claim by American. The respondents further averred that since Houston, by its attorney, took full charge and control of McCubbin's defense in Snyder's damage suit and presented evidence and cross-examined witnesses at that trial, Houston was and is bound by the judgment in that action and for its payment

with the same force and effect as if Houston had been named a party defendant to that cause. The motions of Houston and McCubbin to dismiss the cross-claim set up various grounds therefor, which will be particularly discussed later herein, and upon submission to the trial court were overruled by the Hon. Theodore McMillian, who was thereafter succeeded in the Division in which the cause was pending by the Hon. Franklin Reagan, both being judges of the Circuit Court of the City of St. Louis.

Relators then filed their motion to strike portions of the respondents' return, and we granted both parties time to file suggestions in support, opposition, and reply to the motion. By their motion, the relators sought to strike extensive portions of the return, and since we overruled that motion in part, and sustained it in part, it will serve no useful purpose to again set out in detail the matters sought to be stricken. Suffice it to say that we granted relators' motion to strike from the return those allegations dealing with the application by McCubbin to the Probate Court of Lawrence County for letters of administration. We denied the motion to strike the allegations of the return dealing with Houston's investigation and defense of the damage suit, and its right to negotiate a settlement of that action, Houston's control of McCubbin's defense in the equity action, the allegations of the return regarding its payment to Snyder of $10,000 on the same day Snyder dismissed his equity action as to Houston, the allegations that by such payment it recognized the existence of a direct obligation by it to Snyder for the payment of Snyder's judgment, that Houston was liable under the laws of Texas for the payment of Snyder's judgment and also for American's cross-claim, and that by its actions in the defense of McCubbin on Snyder's damage suit Houston is bound, as a consequence thereof, by the judgment the same as if Houston had been named a party to that action. The case was thereupon set for brief and argument, and was submitted during the January docket.

It will first be noted that of the four defendants named in Snyder's action under § 379.200, supra, two are residents of the City of St. Louis: Jensen, who was never served, and American. One defendant is a resident of Lawrence County, Missouri: McCubbin. The other defendant, Houston, is a resident of Texas, although it is admitted that it is licensed to do business in this state and has filed its power of attorney with the Department of Insurance of this state, authorizing and appointing the Superintendent of that department to acknowledge and receive process in any action instituted against it in this state. Secondly, it must be kept in mind that what began as an action under the provisions of § 379.195 and § 379.200, supra, has been changed by the force of events and the pleadings into what is essentially an action for contribution by American against Houston. Be that as it may, it does not follow that we can disregard Snyder's original action under the provisions of § 379.195 and § 379.200, supra. It will be apparent that for the purposes of some of the determinations necessary to dispose of this case, that action must be referred to, although Snyder now has no further interest in the determination of the question before us. He has fully recovered the entire amount of his judgment, and can recover no more from anyone regardless of our determination here.

■ The function of the writ of prohibition is to restrict the judicial person to whom it is directed from acting or proceeding in some matter in which he has no jurisdiction, or acting so in excess of jurisdiction possessed that he may be said to be acting without jurisdiction. State ex rel. City of Mansfield v. Crain, Mo.App., 301 S.W.2d 415. The remedy afforded by the writ of prohibition is to prevent usurpation of judicial power, § 530.010 RSMo 1959, V.A.M.S.

Relators advance many reasons for their position that the trial court lacks jurisdiction over American's cross-claim and over the persons of the relators. It would only

further confuse an already confusing situation to attempt to summarize relators' position. Instead, we will deal with each of relators' contentions, stating them at the beginning of our consideration of the point they present. Unfortunately, a full understanding of the points presented cannot be had in this case without the wording of the various statutes involved being constantly before us, and for that reason and because of the high degree of interdependence each point presented bears to each of the other points, although we regret having to do so, many of the pertinent statutes must be set forth in full in the body of this opinion.

Section 379.195, supra, reads:

"1. In respect to every contract of insurance made between an insurance company, person, firm or association, whether a stock, a mutual, a reciprocal or other company, association or organization, and any person, firm or corporation, by which such person, firm or corporation is insured against loss or damage on account of the bodily injury or death or damage to property by accident of any person, for which loss or damage such person, firm or corporation is responsible, whenever a loss occurs on account of a casualty covered by such contract of insurance, the liability of the insurance company, if liability there be, shall become absolute, and the payment of said loss shall not depend upon the satisfaction by the assured of a final judgment against him for loss, or damage, or death, or if the insured becomes insolvent or discharged in bankruptcy during the period that the policy is in operation or any part is due or unpaid, occasioned by said casualty.

"2. No such contract of insurance shall be canceled or annulled by any agreement between the insurance company and the assured after the said assured has become responsible for such loss or damage, and any such cancellation or annulment shall be void."

Section 379.200, supra, reads as follows:

"Upon the recovery of a final judgment against any person, firm or corporation by any person, including administrators or executors, for loss or damage on account of bodily injury or death, or damage to property if the defendant in such action was insured against said loss or damage at the time when the right of action arose, the judgment creditor shall be entitled to have the insurance money, provided for in the contract of insurance between the insurance company, person, firm or association as described in section 379.195, and the defendant, applied to the satisfaction of the judgment, and if the judgment is not satisfied within thirty days after the date when it is rendered, the judgment creditor may proceed in equity against the defendant and the insurance company to reach and apply the insurance money to the satisfaction of the judgment."

The relators contend that our writ should be made absolute because the cross-claim fails to state a cause of action and cannot be amended to do so. The effect of relators' argument is to concede that while Jensen may have had a right to contribution against McCubbin, this fact does not aid American because: (1) the right is personal, and American cannot enforce it for Jensen; (2) even if American could enforce Jensen's right to contribution, it can only do so against McCubbin, not against Houston; and (3) even if points (1) and (2) are not sustained, American cannot proceed against Houston in this case because it had not paid more than one-half of the judgment at the time the cross-claim was filed.

Section 537.060 RSMo 1959, V.A. M.S., provides for the right of contribution between joint tort-feasors and apart from that statute no such right exists in this state. State ex rel. McClure v. Dinwiddie, 358 Mo. 15, 213 S.W.2d 127.

Under that section of our statutes there can be no question but that Jensen had a statutory right of contribution against McCubbin, who was his joint defendant, his joint tort-feasor, and his joint judgment debtor, Neal v. Curtis & Co. Manufacturing Co., 328 Mo. 389, 41 S.W.2d 543. The matter has not been settled in this state prior to this case, so far as able counsel and this writer can determine, but the divergent views on the question of whether or not such a statute dealing with contribution between joint tort-feasors confers a personal right to the joint tort-feasor alone or whether such a statute allows an insurance company to be subrogated to the joint tort-feasor's personal right of contribution are amply illustrated by some cases from our sister states. The view that an insurer of one joint tort-feasor is not entitled to contribution from the insurer of another joint tort-feasor is illustrated by Gaffney v. Lumbermen's Mutual Casualty Co., 209 N.C. 515, 184 S.E. 46, and Lumbermen's Mutual Casualty Co. v. United States Fidelity & Guaranty Co., 211 N.C. 13, 188 S.E. 634, both North Carolina cases. The statutes in those cases were similar to Missouri's statute, and the court held that because it mentioned only joint tort-feasors and joint judgment debtors, even a most liberal construction would not permit the reading into the statute of the insurance carrier of one of the tort-feasors. At this point it should be noted that our statute, § 537.060, supra, uses the word "defendant." The better view is illustrated by the language of the Supreme Court of Virginia in McKay v. Citizens Rapid Transit Company, 190 Va. 851, 59 S.E.2d 121, 20 A.L.R. 2d 918. In that case the court pointed out that the Virginia statute allowing contribution among joint tort-feasors did not by its terms forbid subrogation to an insurer of a tort-feasor nor did it in any way give any indication there was anything personal in the right of contribution conferred. The same is true of the Missouri statute. After all, subrogation is essentially a right invented by equity to compel the ultimate discharge of the debt by the one who in good conscience and fairness should pay it, McKenzie v. Missouri Stables, Inc., 225 Mo.App. 64, 34 S.W.2d 136; National Garment Company v. New York City & St. Louis Railway Company, 8 Cir., 173 F.2d 32. It is allowed to nearly every right and we can see no sound reason for refusing the application of subrogation to the right of contribution. This is in keeping with the general rule as stated in 46 C.J.S. Insurance § 1209, at page 166, as follows:

"Joint tort-feasors. Where insurer of one of two joint tort-feasors paid the judgment against them in an action by the injured person, insurer is entitled to be subrogated to the right of contribution which insured would have had against the other joint tort-feasor, if insured had paid the judgment; but insurer can have no right to contribution if insured would not have had that right, * * *."

We therefore hold that American is subrogated to Jensen's right of contribution from McCubbin.

■ Can American, as Jensen's subrogee, enforce Jensen's right of contribution against Houston, the insurer of his joint tort-feasor McCubbin? In this connection, relators' contention is that to permit contribution under these circumstances would be to permit the insurer seeking it, American, to recover under a contract of indemnity between McCubbin and Houston to which American was never a party. On the question of the necessity for and presence of privity between Snyder and Houston, see Lajoie v. Central West Casualty Co. of Detroit, Michigan, 228 Mo. App. 701, 71 S.W.2d 803; Taverno v. American Auto Insurance Co., 232 Mo. App. 820, 112 S.W.2d 941. The identical situation with which we are here confronted was considered by the Fourth Circuit Court of Appeals in American Employers' Insurance Company v. Maryland Casualty Company, 218 F.2d 335. In that

case, the court in answering this contention pointed out the complete refutation to this argument. It is that the doctrine of contribution does not rest upon contract, but rather finds its basis in general principles of equity and of natural justice. The doctrine is to be applied when one has been compelled to pay more than his share of a common obligation which several persons are bound to discharge. See Grasberger v. Liebert & Obert, Inc. et al., 134 Pa. Super. 78, 4 A.2d 186; Quatray v. Wicker et al., 178 La. 289, 151 So. 208; Hardware Mutual Casualty Co. v. Rasmussen Drug Co., 261 Wis. 1, 51 N.W.2d 551; Leitner v. Hawkins, 311 Ky. 300, 223 S.W.2d 988; Consolidated Coach Corporation v. Burge, 245 Ky. 631, 54 S.W.2d 16, 85 A.L.R. 1086; Frankfort General Insurance Co. v. Milwaukee Electric Ry. & Light Co., 169 Wis. 533, 173 N.W. 307. At page 340 of the report of the opinion in American Employers' Insurance Co. v. Maryland Casualty Co., 218 F.2d 335, supra, the court states:

"We reach the same destination in the pending case. In most instances a potential right of contribution arises upon the assumption by several persons of a common obligation, but it is not essential that the obligation be assumed simultaneously. It is of no moment that in the pending case each of the insurance companies, which are parties hereto, independently of the other, issued a policy of automobile insurance covering the owner of a particular car for liability for injuries inflicted in the operation of the vehicle, and that there was no relationship between the insurers or between the policy holders at the time either policy was issued. The important circumstance is that an accident occurred involving both cars in which the drivers of both were at fault, so that each insured became immediately liable and the indemnity provisions of each policy became effective with respect to all the injuries incurred. Thereupon the two insurance companies became

subject to a common obligation to the extent of the respective limits of their policies, and when one of them paid the total amount of the debt, the right to contribution from the other arose."

It should be pointed out that under §§ 379.-195 and 379.200, supra, the obligation on the part of American and Houston to pay accrued the moment judgment was rendered against Jensen and McCubbin, in Snyder's original damage action. Stedem v. Jewish Memorial Hospital Association of Kansas City, 239 Mo.App. 38, 187 S.W.2d 469. See also Cotton v. Iowa Mutual Liability Insurance Company, 363 Mo. 400, 251 S.W.2d 246, appeal transferred Mo.App., 260 S.W. 2d 43.

■ It cannot be denied but that Houston's policy would cover any liability McCubbin might have to American as subrogee of Jensen's right of contribution, St. Paul & Kansas City Short Line R. Company v. United States Fidelity & Guaranty Company, 231 Mo.App. 613, 105 S.W.2d 14, at page 22. In that case it is said, on page 22:

"In the contemplation of the parties, the policy issued was meant to indemnify not only against direct actions for tort by injured persons, but also to cover loss which the assured might suffer by reason of being liable over to others who have been compelled to pay damages to persons injured because of the negligent or wrongful act of coassureds or their agents. The rule is well stated by Couch in volume 5 of Cyclopedia of Insurance Law, § 1165b, pp. 4136 and 4137, as follows:

" ' * * * public liability policies ordinarily are not confined to, and do not contemplate, indemnity only against direct actions by injured persons against the insured; rather, they cover losses which he may suffer by reason of being liable over to another who has been compelled to pay for damages to persons injured because of the negligence or wrongful act of the insured,

or his agents, which resulted in such injuries being inflicted. In other words, the insured may sustain a loss from liability to the public on account of personal injuries caused by them, or their workmen, and such loss be brought within the terms of the policy by circuity of action, and the case be as plainly within the policy terms as though the injured person's suit had been brought against them in the first instance.'"

The dangers inherent in an adoption of the relators' position are also well disposed of by the court in the Maryland Casualty Company case, supra, 218 F.2d 335, at page 339, where it is said:

"'Unless the statute allowing contribution could be invoked in cases like the one at bar very unjust situations would result. There would be placed in the hands of the plaintiff in the original judgment action sole control over the right of contribution of the joint tort-feasor. If the plaintiff saw fit to make a joint tort-feasor a party defendant to the original judgment action then contribution would be allowed to another joint tort-feasor, but if arbitrarily the plaintiff in the original judgment action decided to make only one joint tort-feasor a party to the judgment action the other joint tort-feasor might be powerless to do so, and however joint the negligence might be, would be deprived of his right to contribution.'"

Accordingly, we hold that American as subrogee of Jensen's right of contribution could enforce that right against Houston, the insurer of Jensen's joint tort-feasor, joint judgment debtor and joint defendant.

We pass now to the relators' contention that the cross-claim was in effect premature because at the time it was filed American had not then paid more than half of the judgment. It will be recalled that American filed its cross-claim on July 2, 1957, and that Snyder's motion for judgment was sustained on August 2, 1957. On August 23, 1957, Snyder acknowledged satisfaction of the order of the court directing American to pay $7,500. It is obvious, therefore, that while the record does not show the date of the payment to Snyder, it took place after the filing of the cross-claim. The relators' argument is that American can have no right to contribution if Jensen would have had none, 46 C.J.S., § 1209, supra, and Jensen, they argue, had no such right at the time the cross-claim was filed because neither he nor anyone for him had paid more than one-half of the judgment, and therefore, subrogation being essentially substitution, 83 C.J.S. Subrogation § 1, page 575, American cannot be subrogated to Jensen's right of contribution. That right, they urge, at that point in the chronological order of this case, was then only contingent.

Section 509.460 RSMo 1959, V.A.M.S., relates to cross-claims and reads:

"*Cross-claims against coparty.*—A pleading may state as a cross-claim any claim by one party against a coparty arising out of the transaction or occurrence that is the subject matter either of the original action or of a counterclaim therein. Such cross-claim may include a claim that the party against whom it is asserted is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant."

The respondents rely on the words, "is or may be" as used in § 509.460, supra. Relators contend that § 509.460, supra, merely authorizes the filing of a cross-claim on a cause of action which is then in existence but where liability on such claim is dependent upon the determination of other issues of fact and does not authorize the filing of a cross-claim where the cause of action was not in existence at the time the cross-claim was filed.

The relators' contention that the cause of action was not then in existence is not well

taken. Actually, the principal case relied upon by relators is of assistance to respondents. Yore v. Yore, 240 Mo. 451, 144 S.W. 847, states the rule, citing 3 Cyclopedia, p. 798, that the right to contribution is inchoate from the date of the creation of the relation between the parties (here, the judgment) although unenforceable until actual payment. This means that the right of contribution was "Imperfect; unfinished; begun but not completed; * * *" (see "inchoate", Black's Law Dictionary, 2d Edition). The right was therefore in existence, though inchoate, and relators' contention that payment does not complete or mature the claim but brings it into existence must be disallowed. Accordingly, the "claim" referred to in § 509.460, supra, was in existence. See Barb v. Farmers Insurance Exchange et al., Mo., 281 S.W.2d 297. To the same effect, see State ex rel. Algiere v. Russell, 359 Mo. 800, 223 S.W.2d 481; Gabel-Lockhart Co. et al. v. Gabel, 360 Mo. 518, 229 S.W.2d 539; Bond Diamond Co. v. Wilson, Mo.App., 325 S.W.2d 63.

■ Another reason the relators' position is not well taken is that a cause of action may be pleaded by amendment even though the facts on which it is based did not exist when the original pleading was filed, or even though the cause of action accrued after the commencement of the action, Bailey v. Williams, Mo., 326 S.W.2d 115. While no such amendment has yet been filed, there is no reason it cannot yet be so amended to show the payment of the $7,500. In the instant case, the relators have not filed any responsive pleading to the respondents' cross-claim and respondents' amendment is a matter of right under the provisions of § 509.490 RSMo 1959, V.A.M.S. It would also be within the discretion of the trial court to allow such an amendment under the permissive provisions of that same section or the provisions of § 509.510 RSMo 1959, V.A.M.S. The cross-claim can therefore be amended to state a cause of action even if we accept the relators' contention regarding the fact that at the time the cross-claim was filed, American

had not paid more than one-half of the judgment. Since it can be amended to state a cause of action, prohibition will not lie. State ex rel. C. H. Atkinson Paving Co. v. Aronson, 345 Mo. 937, 138 S.W.2d 1; State ex rel. National Refining Co. v. Seehorn, 344 Mo. 547, 127 S.W.2d 418.

Accordingly, we hold that American is not barred from enforcing the right to contribution it got as Jensen's subrogee against McCubbin and Houston because at the time the cross-claim was filed it had not yet paid more than one-half the judgment.

■ Relators then contend that even if the claim comes within the purview of § 509.460, supra, such a claim is barred in this case because of the provision of the probate statute of nonclaim. It is their position that since McCubbin was appointed prior to the effective date of the new probate code (January 1, 1956) the provisions of the old code were applicable and therefore since under that probate code contingent claims could not be filed against an estate until after the contingency was removed (Kimpton et al. v. Spellman et al., 351 Mo. 674, 173 S.W.2d 886; Binz v. Hyatt et al., 200 Mo. 299, 98 S.W. 637) and the statutory period for nonclaim of one year was held to mean one year from the date the contingency was removed and liability became fixed, Grigg v. Lively, 214 Mo.App. 473, 257 S.W. 187, and since whatever right American had to file a contingent cross-claim against McCubbin existed from the date Snyder filed his action under § 379.195 and § 379.200, supra, October 12, 1955, American had one year from that time to file such claim. Their conclusion is that the cross-claim is barred because it was not filed until July 2, 1957. Moreover, they urge, the claim was also out of time under the provisions of the new probate code, for § 473.360 RSMo 1949, V.A.M.S., specifically required all claims against an estate, including contingent claims, to be filed within nine months. The effect, they urge, was that as of January 1, 1956, the effective date of the new probate code recognizing contingent claims,

the court-made law preventing the filing of contingent claims was removed, and those claims must then have been filed within nine months or be barred and the cross-claim was not filed within this time. There are again several answers to relators' argument but we need state only one. Under the holding herein that American can enforce the right to contribution it acquired as Jensen's subrogee against Houston, there is no need to prove any claim against Mc-Cubbin. Obviously, the provisions of either probate code have no application to any proceeding against Houston.

The relators' first assigned reason why the cross-claim does not state a cause of action and cannot be amended to do so is ruled adversely to relators.

 The next reason assigned by relators is that Snyder's claim against Jensen and American was improperly joined with Snyder's claim against McCubbin and Houston, with the result that venue was improper. Since §§ 379.195 and 379.200, supra, do not otherwise provide, the proceedings thereunder are governed by our Civil Code, § 506.010 RSMo 1949, V.A.M.S. Section 508.010 RSMo 1949, V.A.M.S. reads:

"*508.010. Suits by summons, where brought*

"Suits instituted by summons shall, except as otherwise provided by law, be brought:

\* \* \* \* \* \*

"(2) When there are several defendants, and they reside in different counties, the suit may be brought in any such county; \* \* \*"

By the provisions of § 509.060 RSMo 1949, V.A.M.S., Snyder had a right to join in his petition as many claims as he had against either American and Houston subject to meeting the requirements of § 507.040, subsection (1) RSMo 1949, V.A.M.S. That section reads as follows, insofar as it is pertinent:

"*507.040. Permissive joinder of parties-separate trials*

"\* \* \* All persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action. A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief, and against one or more defendants according to their respective liabilities. \* \* \*"

The purpose of this section has been said to be to extend to all civil actions the liberal rules of permissive joinder prevalent in equity. Glidewell v. Hughey, Mo., 314 S.W.2d 749. It is clear from a reading of § 507.040, supra, that joinder is permitted only when two elements are present: first, where there is asserted any right to relief jointly, severally or in the alternative in respect of or arising out of the same transaction, occurrence or series of transactions or occurrences; second, where there is a question of law or fact common to all that will arise in the action.

Relators contend that the ruling in State ex rel. Campbell v. James, Mo., 263 S.W.2d 402, precludes joinder as under the ruling of that case, § 508.010, supra, is applicable only where the defendants are liable to a joint action. The Campbell case does not so rule, but expressly rules, at syllabi [2–3], [4], page 406 et seq. that joinder under § 508.010, supra, for the purpose of review is governed by § 507.040, supra, regardless of whether there are joint causes of action. In that case, the plaintiffs sought to join as defendants in an action certain individuals who plaintiffs contended had exploded dynamite upon adjoining land with resulting damage to plaintiffs' property with

the insurance companies which had insured plaintiffs against damage to their property by explosion. The basis of the decision of the court in the Campbell case was that the plaintiffs' claim against the tort-feasors in that case arose out of their wrongful act, an "occurrence", while their claim against the corporate defendants, their insurers, arose out of the policies, which were "transactions", and that they could not join a claim arising out of "occurrence" with that arising out of a "transaction", these words not being synonymous nor interchangeable. The relators seize upon this very point and press the argument that the cases are indistinguishable upon principle. Relators urge that in the Campbell case the court held that the plaintiffs' rights spring from the same event in either cause of action; i. e., the explosion, yet each cause of action arose out of a separate legal right. So in this case, they argue, the accident and Snyder's injury and his judgment were the event from which his rights sprang, but each policy of insurance was a transaction separate from the other, and gave rise to a separate cause of action. We cannot agree with the relators' application of the sound principles of the Campbell case to the factual situation before us. Under our decision, it is unnecessary to indulge in any exercise in semantics and try to determine whether it is a "transaction" or an "occurrence" that is present. As far as the instant case is concerned, so long as the two are not used interchangeably, it makes no difference what we characterize it, a transaction or an occurrence. The point is that what was missing in the Campbell case is present in the case now before us. In this case, the connection or interdependence between the insurance contracts and this plaintiff's, Snyder's, cause of action is supplied by the unsatisfied judgment and the provisions of § 379.200, supra. The preliminary events or, as relators characterize them, the conditions precedent, have now ripened into a judgment, and that judgment, under the provisions of § 379.200, supra, is the transaction or occurrence with which we are now concerned. It is the

same transaction or occurrence which gave Snyder the legal right to, upon non-payment thereof for the statutory period, proceed against either company. Accordingly, while Snyder's claim in its preliminary stages may be said to have involved different transactions or occurrences, at the present stage of the matter it now arises out of only one transaction or occurrence; i. e., the judgment. For a case upon almost identical facts, see Continental Casualty Co. v. Pierce, 170 Miss. 67, 154 So. 279, wherein the same result was reached upon the theory that the tort liability being joint, the plaintiffs' protection under the policies of insurance was also joint, the liability thereunder being co-extensive with the tort liability. It follows then that the first necessary element of § 507.040, supra, is present for the right to relief Snyder asserted against Houston and American arose out of the same transaction or occurrence, the judgment rendered in Snyder's damage suit against their insureds.

Relators then contend that the second requirement of § 507.040, supra, is not met because there are no common questions of law or fact. It is obvious from the factual situation that the questions of law or fact must be common to Snyder's right to relief against Houston and American. Relators argue that Snyder's right of recovery against each insurer was in no way affected by the existence of another policy or whether one insurer had any rights against the other. As to either, he was entitled to a judgment to the full extent of the policy limits, and relators point to the fact that a judgment was actually entered against American on the pleadings without any consideration of the rights of American against Houston. We believe that the point in time important to our consideration must be October 12, 1955, when Snyder filed his action. In that action Snyder alleged that he had requested Houston and American each to pay one-half of the judgment and interest, but that Houston had refused to do so; that he had requested Houston to pay all the judgment and interest, but that

Houston refused to do so; and that he had requested American to pay to the extent of its policy limits, but that American had refused to do so. These facts were admitted by Houston by its action in filing its motion to dismiss. Snyder prayed that the court order American and Houston each pay him all sums due under the judgment in accordance with the terms of the policies. It is true that Snyder could have filed his action against McCubbin and Houston, or could have filed it against Jensen and American, but he was not required to do so. He also had the right to proceed against both, and he chose to take that route. Because Snyder did so, we think that questions common to the parties necessarily arose from the refusal of each to pay all of the judgment to the extent of its policy limits and from the overlapping liability presented by the amount of the judgment as contrasted to the monetary limitations of each policy. We are therefore of the opinion that there are common questions of law or fact and that since both of the requirements of § 507.040, supra, are present, joinder of Houston and American was permissible and it follows that venue was then proper under the provisions of § 508.010, subsection (2), supra, since there were several defendants who lived in different counties.

Relators' second assigned reason for their contention that our preliminary writ should be made absolute because the cross claim does not and cannot be amended to state a cause of action is ruled adversely to relators.

Passing to relators' next contention, they urge that an action under the provisions of §§ 379.195 and 379.200, supra, cannot be maintained against Houston. The first argument advanced is that the provisions of the sections show by their wording that they were meant to apply only to judgments by administrators or executors and not to apply when the judgment, as it is in the instant case, is against an administrator. The provisions of the statute applicable to this point read:

"*379.200. Judgment creditor may collect insurance, when*

"Upon the recovery of a final judgment against any person, firm or corporation by any person, including administrators or executors, * * *"

Respondents contend that § 379.200, supra, should be read so that the words "including administrators or executors" apply both to judgments against any person and to judgments by any person. Relators contend that if the legislature intended that to be so, then why did they insert the phrase " * * * including administrators or executors * * *" and thus expressly include them as persons when referring to judgment creditors and leave out those words when referring to judgment debtors

■■■■ A consideration of the history of these statutes and the reason for their adoption compels our ruling on this point adversely to the relators. Section 379.195 RSMo 1949, V.A.M.S., supra, was enacted at the same time as § 379.200, supra, and as originally enacted these two sections formed subsections 1 and 2 respectively of the same act. These two sections have been construed together on numerous occasions as it is axiomatic that all the provisions of a legislative act should be construed together and harmonized if possible. Schott v. Continental Auto Insurance Underwriters, 326 Mo. 92, 31 S.W.2d 7; Homan v. Employers Reinsurance Corporation, 345 Mo. 650, 136 S.W.2d 289, 127 A.L.R. 163; Spitcaufsky v. Hatten, 353 Mo. 94, 182 S.W.2d 86, 160 A.L.R. 990. Section 379.195, supra, clearly applies to all insured casualty losses regardless of who is defendant, and reading that section with § 379.200, supra, compels our decision that the legislature did not intend to exclude holders of judgments against administrators from the provisions of § 379.200, supra. Moreover, the purpose the legislature sought to accomplish would be thwarted instead of achieved if the relators' contention is adopted. In the case of Schott v. Continental Auto Insurance Underwriters, 31

S.W.2d 7, supra, the Supreme Court of this state had before it these same sections, then under attack under an allegation that the subject matter of the legislative act creating them was not clearly expressed in the title of that act as provided by the Constitution of this state. At page 12, the court, after reciting that it had long been the custom of many insurance companies to insert a "no action clause" in their contracts, stated:

"It had not infrequently happened that an insolvent insured, after incurring liability, effected a collusive settlement with the insurer and canceled his policy in order to thwart the collection of a judgment against him through garnishment of the insurance money.

"The mischief which the Legislature had in mind is obvious; to remedy that mischief it passed an act to *regulate the payment* under contracts of casualty insurance." (Emphasis the court's.)

That mischief would have been only partially avoided if we were to adopt relators' position, for then "no action" clauses would still be effective if the insured were to become deceased and the judgment was rendered against his administrator or executor. The legislature clearly recognized the end it sought to achieve and it would be violative of the most elemental rules of statutory construction if we were now to say that they intended only to partially accomplish their objective.

In addition to the reasons above stated, if attention is given to the language of the statute as relators urge, the result is adverse to their position. It seems to us the legislature did expressly include administrators and executors as to both judgment debtors and judgment creditors. It did so by setting off that phrase in commas, thus intending it to refer to and modify the word "person" in both of its uses. It seems to us that the use of this phrase "including executors and administrators" only once and separating it by commas accomplished the same purpose as having inserted the phrase twice and does so in a natural and usual manner of language usage. This point is ruled adversely to the relators.

The last reason relators press in support of their contention that the cross-claim does not and cannot be amended to state a cause of action and therefore our preliminary writ should be made absolute is that the action provided under § 379.200, supra, cannot be maintained against Houston. The relators' argument is that the section is substantive in nature and being so, cannot be granted extraterritorial effect by allowing the rights of direct action created by the statute to be employed where a foreign contract is involved.

Respondents urge that since Houston's policy is not before us and since the pleadings do not state whether or not a "no action clause" is contained in that policy, we need not decide this point. Regrettably, this contention is unsound. Relators' position is that the trial court has no jurisdiction to proceed in this case because § 379.-200, supra, being substantive, created a right in Snyder that can apply only to Missouri contracts of insurance. Of course, if Snyder had no right of action against Houston and McCubbin, then obviously the cross-claim must also fail because it depends upon the original suit by Snyder for its proper venue among certain other matters. For this reason, we must look to Snyder's original action brought under the provisions of § 379.200, supra, and not to the cross-claim. The question is whether or not the trial court has jurisdiction of such an action when there is a foreign contract of insurance involved, and is independent of any consideration of the merits of the action, as for example, the point that Houston's policy may not contain a "no action clause." This contract of insurance is admittedly a foreign contract, and if that were not admitted, the application of the tests set out in Yeats v. Dodson, 345 Mo. 196, 127 S.W.2d 652, opinion modified in 138 S.W.2d 1020, would compel the same ruling. As we con-

ceive this case, the point is necessary to complete disposition of the matter before us.

 There is ample authority to the effect that statutes such as §§ 379.195 and 379.200, supra, are remedial in nature. One such case is Macey v. Crum, 249 Ala. 249, 30 So.2d 666, a case upon strikingly similar facts. See also McArthur v. Maryland Casualty Co., 184 Miss. 663, 186 So. 305, 120 A.L.R. 846, and cases cited in note beginning on page 855; contra, see Coderre v. Travelers' Insurance Co., 48 R.I. 152, 136 A. 305, 54 A.L.R. 512 and cases cited in note beginning on page 515; see also Buzzone v. Hartford Accident & Indemnity Co., 41 N.J.Super. 511, 125 A.2d 551; United States Casualty Co. v. Georgopulo, 15 Misc. 2d 169, 181 N.Y.S.2d 728; State Farm Mutual Auto Ins. Co. v. McClendon, 269 Ala. 456, 114 So.2d 153; Aponte v. American Surety Co. of New York, D.C., 171 F.Supp. 677. The confusion rampant on the point between the various jurisdictions in this nation is aptly illustrated by two cases from Louisiana. Compare Wheat v. White et al., D.C.La., 38 F.Supp. 796, decided by the U. S. District Court for the Eastern District of Louisiana in 1941, with Rogers v. American Employers' Insurance Co., D.C. La., 61 F.Supp. 142, a 1945 decision of the U. S. District Court for the Western District of Louisiana.

Those interested can find the cases collected under the following headnotes: Insurance 4, 147(1, 2), 591½; Constitutional Law, 169, 249, 307; States, 5½. The General Digests will disclose many cases upon the point, and when this writer had read them, it seemed clear to him that the majority of the states of this nation having such statutes and having occasion to interpret them have held them to be remedial or procedural in nature.

In Schott v. Continental Auto Insurance Underwriters, supra, and in Homan v. Employers Reinsurance Corporation, 345 Mo. 650, 136 S.W.2d 289, at page 295, 127 A.L.R. 163, it was held that regulation of the pay-

ment was the single objective of the act and that such a remedy was not new but was essentially that of a creditor's bill or equitable garnishment proceeding. It is also stated herein that by adopting the Massachusetts statute, the legislature of this state also adopted the construction put on that act by the Massachusetts court. In the report of Lorando v. Gethro, 228 Mass. 181, 117 N.E. 185, 1 A.L.R. 1374, at page 188 of 117 N.E., the Massachusetts Supreme Court said that the statute "* * * does not enlarge or modify in any respect the substantial liability created by the contract of insurance." The Supreme Court of Alabama, in Macey v. Crum, supra, relied upon that language in holding their direct action statute procedural or remedial. Nevertheless, the Supreme Court of this state, en banc, in State ex rel. Anderson v. Dinwiddie, 359 Mo. 980, 224 S.W.2d 985, specifically held these statutes to be substantive. Sections 379.195 and 379.200, supra, were then in effect as §§ 6009 and 6010 RSMo 1939, and § 507.040, supra, was in effect as § 16 of the then newly enacted Code of Civil Procedure (Laws of Missouri, 1943.) At local citation page 987 of 224 S.W.2d, the court held:

"The next preceding Sec. 6009, provides for recourse against the insurance company even before final judgment against the insured, if he has become insolvent or discharged in bankruptcy. It was held in Homan v. Employers Reinsurance Corp., 345 Mo. 650, 658(2), 136 S.W.2d 289, 295(2), 127 A.L.R. 163, *that both these statutes become a part of every insurance contract within their coverage. They are substantive and undoubtedly prevail over procedural statutes, such as Sec. 38, supra, unless they are waived.* Sec. 6010 expressly applies to cases such as this, for bodily injury or death. It says that upon the recovery of *final judgment* for such injuries, if the judgment is not satisfied within 30 days the judgment creditor may sue the defendant *and* the insurance company in equity to

reach and apply the insurance money to the satisfaction of the judgment." (First emphasis supplied, second and third, the court's.)

The effect of the court's ruling was that the substantive sections prevailed over procedural statutes, and therefore the plaintiff could not join the insurance company as a party defendant until a judgment had been awarded and had remained unsatisfied for 30 days. The ruling in State ex rel. Anderson v. Dinwiddie, supra, is binding upon us and these statutes are substantive. To the effect that these statutes are substantive is the language found in the separate concurring opinion in State ex rel. McCubbin v. Ginn, a decision of the Missouri Supreme Court en banc, 347 S.W.2d 119. In that opinion these statutes were referred to as creating a right on the part of the injured party, and the Homan and Dinwiddie cases were specifically approved.

■ Upon such a determination as to whether the statute is substantive or remedial generally has been held to rest the answer as to whether or not it could apply to a foreign contract. The general rule is that the law of the jurisdiction in which relief is sought, the lex fori, in this case the law of Missouri, controls as to all matters relating to remedial as distinguished from substantive rights, the latter being controlled by the lex loci contractus. Alropa Corporation v. Smith, 240 Mo.App. 376, 199 S.W.2d 866, at page 869; Ultra-Life Laboratories v. Eames, 240 Mo.App. 851, 221 S.W.2d 224, at page 233; Restatement, Conflict of Laws, Ch. 12, § 585, page 702. In 15 C.J.S. Conflict of Laws § 22, page 948, the rule is stated in this manner:

"While the substantive rights of the parties to an action are governed by the lex loci, the law of the place where the right was acquired or the liability was incurred, see the C.J.S. title Actions § 2 a, the lex fori see supra § 9, or law of the jurisdiction in which relief is sought, controls as to all matters pertaining to remedial, as distinguished from substantive, rights. (Citing Mis-

souri cases.) This rule, which has been embodied by the American Law Institute in its Restatement of the Law of Conflict of Laws (§ 585), obtains whether the action is on contract or for tort."

To this effect see Auffenberg Lincoln-Mercury, Inc. v. Wallace, Mo.App., 318 S.W.2d 528, at page 532. Therefore, if we were to blindly follow the path named "remedial or substantive", the Dinwiddie case would compel us to hold that the provisions of §§ 379.195 and 379.200, supra, being substantive, cannot apply to Houston's contract of insurance.

■ The specific point here involved has never been ruled in this state under a comparable set of facts. In Homan v. Employers Reinsurance Corporation, supra, the court clearly stated that it was proceeding on the assumption, conceded by the insurer, that the policy was a Missouri contract. That being so, the statutes obviously applied and the point was not before the court. In Yeats v. Dodson, 345 Mo. 196, 127 S.W.2d 652, opinion modified in 138 Mo.2d 1020; the case most similar to the instant case upon this point with respect to the factual situation, the court found the policy there involved to be a Missouri contract, and again these sections were obviously applicable as a foreign insurance contract was not before the court. However, the opinion in the Yeats case lucidly states the problem involved in this case. The policy contained a "no action clause", and the defendants contended that it was an Oklahoma policy. At page 654 of 127 S.W.2d the court states:

"It is conceded that this is true only if the policy is an Oklahoma contract, because if it is a Missouri contract Sections 5898 and 5899, R.S.1929, Mo. St.Ann. §§ 5898, 5899, pp. 4499, 4500, apply and make the 'no action clause' void. Schott v. Continental Auto Ins. Underwriters, 326 Mo. 92, 31 S.W.2d 7; see also Lajoie v. Central West Casualty Co., 228 Mo.App. 701, 71 S.W.2d

803; Brucker v. Georgia Casualty Co., 326 Mo. 856, 32 S.W.2d 1088."

The leading case upon this question is Allgeyer v. State of Louisiana, 1897, 165 U.S. 578, 17 S.Ct. 427, 41 L.Ed. 832, and from that decision evolved the doctrine that the obligations under a foreign insurance contract are fixed by the law of the loci contractus and cannot be altered or affected by the statutes of another state. In New York Life Insurance Co. v. Head, 1914, 234 U.S. 149, 34 S.Ct. 879, 58 L.Ed. 1259, the Supreme Court of the United States reversed the Supreme Court of Missouri on this very point stating (234 U.S. at page 161, 34 S.Ct. at page 882) that Missouri's statutes could not be allowed

"* * * to operate beyond the jurisdiction of that state and in the state of New York and there destroy freedom of contract without throwing down the constitutional barriers by which all the states are restricted within the orbits of their lawful authority and upon the preservation of which the government under the Constitution depends."

In 1918, in New York Life Insurance Company v. Dodge, 246 U.S. 357, 38 S.Ct. 337, 62 L.Ed. 772, a similar result was enunciated upon a factual situation differing in its essentials on the point from the Head case only in that the insured was a resident of Missouri. The case was originally ruled in the Springfield Court of Appeals and contains a vigorous dissent by Mr. Justice Brandeis which will be referred to later herein. Then in 1924, in Aetna Life Insurance Company v. Dunken, 266 U.S. 389, 45 S.Ct. 129, 69 L.Ed. 342, the Supreme Court confirmed the doctrine as they also did in 1930 in Home Insurance Company v. Dick, 281 U.S. 397, 50 S.Ct. 338, 74 L. Ed. 926, 74 A.L.R. 701.

In 1934 in Hartford Accident & Indemnity Co. v. Delta & Pine Land Co., 292 U.S. 143, 54 S.Ct. 634, 78 L.Ed. 1178, 92 A.L.R. 928, rehearing denied 292 U.S. 607, 54 S. Ct. 772, 78 L.Ed. 1468, for the first time it expressly appeared in a majority opinion, that the number and relative weight of the contractual obligations to be performed in the state of the forum would affect the valid choice of lex fori. In that case the court found obligations (called contacts) within the state too few and too tenuous to call a choice of the lex fori reasonable. For a consideration of this same question but with respect to interinsurance or reciprocal insurance see Hoopeston Canning Co. v. Cullen, 318 U.S. 313, 63 S.Ct. 602, 87 L.Ed. 777, 145 A.L.R. 1113. As to fraternal benefit insurance cases see Asel v. Order of United Commercial Travelers of America, Mo.App., 193 S.W.2d 74, transferred and affirmed 355 Mo. 658, 197 S.W.2d 639, and cases cited therein. With respect to workmen's compensation and similar statutes see the concurring opinion of Mr. Justice Stone in Bradford Electric Light Co. v. Clapper, 286 U.S. 145, 52 S.Ct. 571, 76 L.Ed. 1026, 82 A.L.R. 696, that jurist's dissent in Yarborough v. Yarborough, 290 U.S. 202, 54 S. Ct. 181, 78 L.Ed. 269, and the opinion he wrote in Alaska Packers' Association v. Industrial Accident Commission of California, 294 U.S. 532, 55 S.Ct. 518, 79 L.Ed. 1052.

In the recent (1954) case of Watson v. Employers Liability Assurance Corporation, 348 U.S. 66, 75 S.Ct. 166, 167, 99 L.Ed. 74, the plaintiff allegedly suffered injuries in the use of a "Toni Home Permanent" which she purchased and used in Louisiana. The Louisiana statute, § 22:655, La.Rev.Stat., 1950, as amended by Act 541, Laws of 1950, provided for a direct action against the insurer even before a determination of the insured's liability. The policy sued upon was negotiated and issued in Massachusetts and Illinois, both of which permitted a "no action clause." The company contended that the Louisiana statute violated the equal protection, contract, due process and full faith and credit clauses of the Federal Constitution. U.S.Const. art. 1, § 10; art. 4, § 1; Amend. 14. The company relied upon Home Insurance Company v. Dick, supra, and the "extraterritoriality doctrine." Mr. Justice Black states the question as "* * * whether the Fed-

eral Constitution forbids Louisiana to apply its own law and compels it to apply the law of Massachusetts or Illinois." The District Court had dismissed the case for the reason that the policies were written and delivered outside of Louisiana (107 F.Supp. 494) and the Circuit Court of Appeals had affirmed that decision (5 Cir., 202 F.2d 407). The court held that because persons injured in Louisiana are likely to be residents of the state or to become charges upon the state, Louisiana had a legitimate interest in safeguarding the rights of persons injured here and has expressed that interest in its direct action statute providing remedies for the recovery of damages and in insurance policies which are designed to assure the ultimate payment of such damages. However, the factual situation prevents the reasoning of either the majority or separate concurring opinions from full application to the instant case. The majority opinion places great reliance upon the fact that the Louisiana direct action statute (Louisiana Rev.Stat.1950, § 22:655 as amended by Act 541 of the Laws of 1950) expressly stated that the right of direct action shall exist " * * * provided the accident or injury occurred in this the State of Louisiana." Our direct action statutes (§§ 379.195 and 379.200, supra) do not contain language expressly or inferentially comparable. Under our statutes it would make no difference where the accident occurred. In Yeats v. Dodson, 345 Mo. 196, 127 S.W.2d 652, opinion modified in 138 S.W.2d 1020, for example, it occurred in New Jersey. Accordingly, the basis of the reasoning, i. e., the possibility of the injured becoming charges upon the state or upon the charity of the citizens of the lex fori is not present to the same extent it was in the Watson case. The separate concurring opinion recites that the writer (Mr. Justice Frankfurter) found the majority's reasoning not without serious constitutional obstacles, a clear reference to the conceptualistic theories of the Head, Dodge, etc. cases, and the reasoning of his opinion is based on the fact that the statute authorizing foreign insurance companies to do business in Louisiana had an express provision whereby those companies specifically accepted the provisions of the direct action statute. Louisiana Rev.Stat. 1950, § 22:983, as amended by Act 542, Laws of 1950. The registration statutes of this state, § 375.210, supra, contain no such requirement, even inferentially. In the absence of such an express acceptance, the language of the opinion in the Head case, 234 U.S. at page 163, 34 S.Ct. at page 882, regarding the inherent fallaciousness of this argument is applicable.

In the majority opinion the so-called extraterritorial doctrine was distinguished by Mr. Justice Black when he noted that in Hartford Accident & Indemnity Co. v. Delta & Pine Land Co., supra, 292 U.S. 143, at page 150, 54 S.Ct. 634, at page 636 the court had " * * * carefully noted that there might be future cases in which the terms of out-of-state contracts would be so repugnant to the vital interest of the forum state as to justify nonenforcement." [348 U.S. 66, 75 S.Ct. 169.] It is true that at this point in time in the instant case there is no attempt to enforce nor to claim the protection of any terms of Houston's contract. What we have before us now is the question of whether the right created by § 379.200, supra (see the separate concurring opinion in State ex rel. McCubbin v. Ginn, Mo. en banc, 347 S.W.2d 119) can be availed of when a foreign contract is involved. Yet a necessary corollary to the statement from the Delta & Pine Land case quoted in the Watson case and set out above is that where to allow the loci contractus to prevail would violate the public policy of the lex fori, the lex fori can, in the exercise of a reasonably expressed regard for the welfare of its citizens, apply its own statutes to the foreign contract.

A proper understanding of our decision herein compels a return to the Dodge case and Mr. Justice Brandeis' dissenting opinion. That dissent was based, in two of its points, upon the contention that the contract was actually a Missouri contract, but his third point, found at 246 U.S. on page 382, 38 S.Ct. on page 343, expressly states:

" * * * There is no constitution-al limitation by virtue of which a statute enacted by a state in the exercise of the police power is necessarily void, if, in its operation, contracts made in another state may be affected. (Citing cases.) The test of constitutionality to be applied here is that commonly applied when the validity of a statute limiting the right of contract is questioned, namely: Is the subject-matter within the reasonable scope of regulation? Is the end legitimate? Are the means appropriate to the end sought to be obtained? * * *

Accordingly, we hold that merely because a substantive right given by § 379.200, supra, might affect Houston's admittedly foreign contract did not prevent Snyder, a Missouri resident, from availing himself of the action provided by that section. Section 379.200, supra, will apply even to foreign contracts and even though it be substantive law, when to do otherwise would so violate the expressed public policy of Missouri as to do violence to a reasonably expressed legislative enactment in the exercise of its police power. It follows that if Missouri has a declared public policy on the point and if that public policy, found to exist, meets the test of reasonableness as viewed in the light of the questions posed by Mr. Justice Brandeis in the quotation from his dissent in the Dodge case set out herein, then the action provided by § 379.200, supra, is available even when foreign contracts of the nature here involved may be affected.

It is clear from the Schott, Yeats, Homan, Dinwiddie, State ex rel. McCubbin v. Ginn, and other cases cited herein that the legislature of this state has, by the adoption of §§ 379.195 and 379.200, supra, declared that under the conditions set out in those statutes, a direct right of action shall exist against an insurance company. This declared public policy is certainly within the scope of legislative regulation. The means employed by this state to so protect its citizens are appropriate to the end sought. As

stated in the Schott case [326 Mo. 92, 31 S.W.2d 12], the provisions of these statutes go directly to the "regulation of the payment" and only very incidentally touch other matters. When the governmental interest of Missouri, viewed in such a light, is weighed against the conceptualistic theory of the past, the reasoning of Watson v. Employers Liability Insurance Corporation, supra, and the soundness of the approach therein is even more apparent and the scale is heavily balanced in favor of the applicability of § 379.200, supra, to this contract of insurance. The very fact that Snyder was forced to avail himself of the right of direct action given him by § 379.200, supra, is indicative of the need for the protection of the citizens of this state. The inequities which resulted from attempts to reach the proceeds of policies of insurance prior to the enactment of these sections as set out in the Schott case resulted in situations which obviously were of proper concern to this state. The fact that sometimes accidents would occur in other states cannot be allowed to defeat this state's interest under its police power for the welfare of its citizens who would, in the great majority of cases, be directly involved in actions brought in this state under the provisions of § 379.200, supra.

We hold that this action under the provisions of § 379.200, supra, can be maintained even though the policy involved constitutes a foreign insurance contract.

The preliminary writ heretofore issued in this case should be ordered quashed. The Commissioner so recommends.

PER CURIAM.

The foregoing opinion of BRADY, C., is adopted as the opinion of this court. The preliminary writ is therefore ordered quashed and the petition for a writ of prohibition denied.

ANDERSON, P. J., and RUDDY and WOLFE, JJ., concur.